[No. 36283.   Department Two.   February 28, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK JOSEPH DRISCOLL, *Appellant*.\*

*J. Morrison MacDonald*, for appellant.

*Charles O. Carroll* and *Victor V. Hoff*, for respondent.

HAMILTON, J.—The defendant appeals from a conviction of the crime of burglary in the second degree. The sole assignment of error is directed to the trial court's refusal to require disclosure of the identity of an alleged police informer.

Upon the state's case in chief, the evidence revealed the following: About 1:15 a. m., Sunday, May 28, 1961, the defendant was observed and apprehended by police officers inside a Seattle tavern; the front door had been forced and the till drawer was splintered; and the defendant signed the following statement:

"Sometime after midnite May 28, 1961 I left my apt [*sic*] taking a long screw driver with me. I walked down to the Square Deal Tavern on Stone Way. I used the screw driver to force the padlock & hasp on the front door, then I went in.

*Reported in 379 P. (2d) 206.

"After I got inside I went behind the bar and used the same screw driver to force a locked money drawer, under the till. I was getting the money when the Police came. When I saw the Police I ran to the back room of the tavern and tried to get out a back door, but couldn't. I was caught by the Police inside the tavern."

During the state's case in chief, upon cross-examination of the state's final witness, the following occurred:

"Q. Did you have any reason to believe that there may have been more than one person present at the time this alleged crime occurred? MR. HOFF: I will object to anything outside the circumstances surrounding the confession. THE COURT: Overruled. A. The only thing I had to go on would be what he told me. He told me he was alone. Q. You had no other information then, is that true, about this crime? A. Yes, sir, I did. I had been informed by an informant that the tavern was going to be burglarized previous to the burglary. Q. Would you give this Court the name of the informant? MR. HOFF: I will object, your Honor. I think this is outside the scope of the direct, clearly. THE COURT: I will not compel him to answer that question if he desires not to at this time. MR. HOFF: Thank you, your Honor. THE COURT: But the choice will be up to the officer as to whether or not he wishes to answer. Q. (By Mr. MacDonald) The choice is yours. A. I would rather not divulge the source of my information or my informant's name. Q. You would state there was an informant who did have previous knowledge? A. Yes, sir. Q. Did the officers have previous knowledge? MR. HOFF: I will object. Clearly he couldn't know what the officers had. THE COURT: Overruled. You may answer if you know. A. That I don't know. Q. Detective Ramar, could you tell me whether there was more than one informant? A. I got my information from a single informant. Q. Could you tell me whether or not the informant participated in this alleged crime in any way? MR. HOFF: If the Court please, I think we are getting into hearsay again on this basis. THE COURT: Objection overruled. A. It is a rather hard question to answer because I wasn't there to know whether the informant was with him. Q. (By Mr. MacDonald) Well, do you have cause to believe that the informant was with the defendant? A. He had approached my informant to burglarize the place, yes, sir. Q. Do you know when the first meeting took place? A. No, sir, I do not. Q. When did the informant come to you? A. I believe it was on the—

I think it was the day previous. That would be the 26th." (Italics ours.)

The state rested, and, following defendant's opening statement, the defendant took the stand. He testified in substance, that he had met two men about 10 days before the incident in question; that they proposed, and he agreed to participate with them in, the burglarizing of the tavern in question; that, on the night of May 27-28, 1961, he went with them to the tavern where he and one of them broke and entered; and that immediately following his apprehension by the police, he thought he heard footsteps coming from the back room of the tavern, past him and out the front door.

Neither the defendant nor the state recalled the witness whose testimony is set out above. The defendant did not renew his request for disclosure of the identity of the purported informer.

It is the defendant's contention, in essence, that at the time of the ruling, during the state's case in chief, the trial court should have been aware that the defendant was going to present a defense of entrapment, and that the testimony of the alleged informer would be a material and relevant factor in that defense.

The United States Supreme Court in the case of *Roviaro v. United States*, 353 U. S. 53, 59, 62, 1 L. Ed. (2d) 639, 77 S. Ct. 623, in discussing the privilege relating to the disclosure of an informer's identity, states:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. *Scher v. United States*, 305 U. S. 251, 254; *In re Quarles and Butler*, 158 U. S. 532; *Vogel v. Gruaz*, 110 U. S. 311, 316. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

" . . .

"We believe that no fixed rule with respect to disclosure

is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

In an annotation upon the subject, 76 A. L. R. (2d) 267, 269, it is stated:

" . . . It seems a fair inference from the cases to state that an accused who seeks disclosure of the identity of an informer has the burden of showing that circumstances exist which justify an exception to the privilege of nondisclosure."

In the instant case, the request came from the defendant at the time and in the manner hereinabove set out, and was not in any fashion thereafter renewed. The defendant, at the time of the request, did not advise the trial court of his proposed defense of entrapment nor undertake, in any way, to enlighten the trial court as to the materiality or relevancy of the requested disclosure. The ruling at that particular stage of the proceedings was to the effect that disclosure would not be required *at that time*. The door was thus open to subsequent showing and request.

The Supreme Court of North Carolina in *State v. Boles*, 246 N. C. 83, 85, 97 S. E. (2d) 476, in considering a like claim of error under analogous circumstances, stated:

"In passing on defendant's assignments based on exceptions Nos. 4 and 5, we must do so in the light of the facts before Judge Johnston at the time he made the ruling complained of. At that time there was no conflict in the testimony. Nothing appeared in the evidence concerning the informer except the fact that he was present when the witness made the purchase. We hold that the defendant did not make a sufficient showing to require the disclosure. The court's refusal to order it under the circumstances was not error.

" . . .

"Had the defendant, in the light of this conflict [a conflict in the evidence developed by defendant's testimony], requested the name of the confidential informer as a possi-

ble defense witness, a more serious question would have been presented. That question, however, was not before Judge Johnston and consequently is not before us. The propriety of disclosing the identity of an informer must depend on the circumstances of the case and at what stage of the proceedings the request is made. *Roviaro v. United States*, decided 25 March, 1957. [353 U. S. 53, 1 L. Ed. (2d) 639, 77 S. Ct. 623.]"

Under the circumstances of the instant case, we hold the trial court did not commit error in the ruling complained of.

The judgment is affirmed.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.