[No. 38161.   Department One.   February 24, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. WINFORD
MASSEY, *Appellant*.*

*David R. LaRose*, for appellant (Appointed counsel for appeal).

*Charles O. Carroll* and *Thomas A. Stang*, for respondent.

OTT, J.—Winford Massey was arrested September 2, 1964, and charged with the crime of unlawful possession of narcotics, namely, heroin. The cause was tried to the court.

From the judgment and sentence entered upon the finding of guilty, Winford Massey has appealed. The court-ap-

*Reported in 411 P.2d 422.

pointed counsel representing the appellant on this appeal did not represent him at the trial.

The appellant assigns error to the court's failure to suppress the evidence. His sole contention in this regard is that the arrest was illegal because the officers, at the time of the arrest without a warrant, did not have probable cause to believe a felony had been or was being committed in their presence.

■ An officer who effects an arrest without a warrant is governed by general rules stated variously as follows: (1) An officer has cause for an arrest if he has reasonable grounds for suspicion, together with evidence of circumstances to warrant a cautious man in believing the accused to be guilty. *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841 (1923). (2) An officer has probable cause to arrest without a warrant if he has knowledge which would convince a cautious but disinterested person that the accused is guilty of a felonious offense. *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965); *State v. Smith,* 56 Wn.2d 368, 353 P.2d 155 (1960); *Beck v. Ohio,* 379 U. S. 89, 13 L. Ed. 2d 142, 85 Sup. Ct. 223 (1964); *Wong Sun v. United States,* 371 U. S. 471, 9 L. Ed. 2d 441, 83 Sup. Ct. 407 (1963). (3) An officer is not required to have knowledge of evidence sufficient to establish the guilt of the accused beyond a reasonable doubt. *Draper v. United States,* 358 U. S. 307, 3 L. Ed. 2d 327, 79 Sup. Ct. 329 (1959).

In the instant case, the appellant offered no evidence to rebut that offered by the state. The state's evidence established, *inter alia,* that appellant had previously been convicted of violation of the narcotics act; that, prior to September 2, 1964, the arresting officers had information from a reliable informant that appellant was selling heroin, and that he had narcotics in his room, No. 401 at the New Richmond Hotel. For several days, the officers had his room under surveillance from an adjoining room, No. 403. During this observation, they had seen appellant associating with known and suspected traffickers in narcotics. The officers obtained a search warrant for room No. 401. When they

went to the hotel to search the room, the following transpired, according to the testimony of Officer Karl Meyer:

Q. When did you arrest him? You say that was in the hall when you stopped him? A. That's right. Q. Why? A. We believed that he had committed a felony and that he was in the process of committing a felony and we also felt that he was about to flee the premises. Q. Why did you believe that? A. When prior to us placing Mr. Massey under arrest I had passed him in the hallway. At that time Mr. Massey observed me very closely and appeared very suspicious of my actions, although I never spoke to him and I did not believe he recognized me. He walked deliberately past Room 401 and he went to the end of the hall which is a fire escape, I would say it's 40 to 50 feet from his room. I then continued around as though I was going to the elevators out of his sight. I then returned and looked and Mr. Massey then had started to walk towards what would be Room 401, but as he came towards the room he did not make any attempt to go into it. It was my belief that he had suspected that something was wrong and was about to leave the premises. Q. Now had you seen him before? A. Yes, sir. Q. Do you know him? A. Yes, sir. Q. Now because he walked past you suspiciously in the hall you then had what you thought probable cause to believe that he had committed a felony? A. No. From other information we had that he— Q. What other information? A. That he had been selling heroin. That he had taken heroin with him when he came into the hotel and that he was in possession of heroin at the time we were placing him under arrest. Q. Where did you get this information? A. From a reliable source of information.

. . . .

Q. (By Mr. Kempton) When did you then get the search warrant? A. It was on August 31st of 1964. Q. What did you do then? A. Pardon me? Q. What did you do then after you got the warrant? Why wasn't the room searched? A. We were observing and keeping Mr. Massey under investigation to obtain further evidence and proof of his trafficking and activities in narcotics traffic. Q. Did you get any further evidence? A. Yes, we did. Q. Did you observe him? A. Yes, we did. Q. Where did you observe him? A. We observed Mr. Massey in contact with persons we know to be dealing in narcotic drugs, a Frank Jenkins, Jesse Hopkins, David Slack, Slack I

believe it's pronounced, and Mr. Turner, Betty Williams and I believe it was Grover Thomas, and there were others I just cannot recall all the names now.

. . . .

Q. You saw him associating with a man whom you had insufficient to make an arrest on and on the basis of that association you claim you had sufficient evidence to arrest this man, is that your testimony? A. On the basis of what we arrested Mr. Massey on is a little different than what you state. Q. What was it? A. We had direct information from one of the persons that was obtaining narcotics from Mr. Massey and who was a peddler on the street for Mr. Massey and shared the profits for Mr. Massey for the narcotics that he sold. Q. What information did you have from him? A. That he obtained in the quantity usually of 20 capsules of heroin. He sold these 20 capsules of heroin for $10.00 each capsule and then shared the price of $7.00 for each capsule with Mr. Massey and he kept $3.00 for his percentage.

Officer Meyer's testimony was corroborated by Officer Chester Sprinkle.

The search revealed 10 capsules of heroin in the lining of appellant's raincoat. While searching the raincoat, the officers found a key with the number 524. Appellant voluntarily told the officers that additional capsules could be found in his overcoat in room No. 524 at the Frye Hotel. A search warrant was obtained, and an additional 84 capsules of heroin were found, together with a paper parcel containing marijuana.

The trial court believed the state's evidence, and applying the law to the facts, found that the officers had probable cause to arrest the appellant without a warrant. The record sustains the trial court in this regard.

Appellant asserts that the court erred in refusing to disclose the name of the informer upon whose information the officers relied. The trial court, in ruling upon the motion to disclose, held that the appellant had not presented sufficient facts to require that such disclosure be made.

■ The privilege of nondisclosure of the name of an informant in criminal cases is predicated upon the protection of the public interest. It is the obligation of citizens

to communicate knowledge of crimes to officers charged with the enforcement of the law. The privilege of nondisclosure is granted to preserve their anonymity and encourage them to disclose such knowledge to the officers. *Roviaro v. United States,* 353 U. S. 53, 1 L. Ed. 2d 639, 77 Sup. Ct. 623 (1957). In discussing the constitutional problem presented, the United States Supreme Court, in the cited case at 62, said:

> The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

This balancing of public interest against the individual's constitutional guarantees was adopted by this court in *State v. Driscoll,* 61 Wn.2d 533, 379 P.2d 206 (1963). We further held in the *Driscoll* case that one who seeks disclosure of the identity of an informant has the burden of showing justification for an exception to the rule of nondisclosure.

We adhere to the rule announced in the *Driscoll* case, and hold that the appellant, by offering no evidence in this regard, failed to justify an exception to the exercise of the privilege of nondisclosure.

One of the arresting officers testified that their informant was reliable. Whether the informant was reliable is predicated upon the officers' prior experience with the informer. The appellant, on cross-examination of the officer relative to the basis for his conclusion that the informer was reliable, did not inquire into the officer's reason for believing the informant to be reliable. He merely asked the name of the informer and, in argument to the court, asserted that if he knew the informant's name he might be able to prove him unreliable. Since reliability alone was challenged for the purpose of requesting disclosure of the informant's

identity, the appellant did not meet the required burden of proof.

Further, the trial judge, in finding probable cause, held that the facts known by the officers, exclusive of the information furnished by the informant, were sufficient to establish probable cause for the arrest without a warrant.

The trial court did not err in denying the motion to disclose.

We have considered appellant's pro se brief of additional authorities and the issues raised therein, and find them to be without merit.

The judgment and sentence is affirmed.

ROSELLINI, C. J., HILL, HUNTER, and HALE, JJ., concur.

April 1, 1966. Petition for rehearing denied.