[No. 38187.   Department One.   August 11, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE A. DAVIS, *Appellant.**

*Irving C. Paul, Jr.,* for appellant (Appointed counsel for appeal).

*Charles O. Carroll* and *Edmund P. Allen,* for respondent.

OTT, J.—George A. Davis was arrested September 22, 1964, and charged with unlawful possession of a narcotic drug in violation of RCW 69.32.080, and unlawful possession of a dangerous drug in violation of RCW 69.40.060, 061, 063.

From the judgment and sentence entered upon the jury's verdict of guilty on both counts, George A. Davis has appealed.

Appellant assigns error to the court's denial of his motion to suppress the evidence obtained at the time of his arrest and search. He contends in this regard that the officers did not have probable cause to believe a felony had been

*Reported in 417 P.2d 622.

or was being committed at the time he was arrested by the officers, without a warrant.

■ In *State v. Massey,* 68 Wn.2d 88, 89, 411 P.2d 422 (1966), we set out the rules governing such an arrest as follows:

> (1) An officer has cause for an arrest if he has reasonable grounds for suspicion, together with evidence of circumstances to warrant a cautious man in believing the accused to be guilty. *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841 (1923). (2) An officer has probable cause to arrest without a warrant if he has knowledge which would convince a cautious but disinterested person that the accused is guilty of a felonious offense. *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965); *State v. Smith,* 56 Wn.2d 368, 353 P.2d 155 (1960); *Beck v. Ohio,* 379 U. S. 89, 13 L. Ed. 2d 142, 85 Sup. Ct. 223 (1964); *Wong Sun v. United States,* 371 U. S. 471, 9 L. Ed. 2d 441, 83 Sup. Ct. 407 (1963). (3) An officer is not required to have knowledge of evidence sufficient to establish the guilt of the accused beyond a reasonable doubt. *Draper v. United States,* 358 U. S. 307, 3 L. Ed. 2d 327, 79 Sup. Ct. 329 (1959).

In the instant case, the state's evidence at the hearing on the motion to suppress established, *inter alia,* that on the evening in question a special squad of the Seattle Police Department was detailed to the New Richmond Hotel and the surrounding area. While five of the officers were walking down a hall in the New Richmond Hotel, they heard loud noises emanating from a room. The door to room No. 211 opened, and the appellant came out into the hall and took several steps in the direction of three of the officers. The other two officers looked into the room through the open door and saw, on top of a table, an eyedropper with a needle attached to the end, usable as a hypodermic syringe, a spoon with a bent handle lying beside the eyedropper, and cotton. As the appellant approached the three officers, Sergeant Matheson said, "Hello, George," and the appellant replied, "Oh-oh, the police," turned, and ran back into the room. The officers testified that the eyedropper with a needle attached, the bent spoon, and the cotton indicated to them that narcotics were being

used. They also stated that a picture of the appellant was posted at the police station. The officers testified regarding the appellant's association with known narcotics users and his use of narcotics as follows:

Q. Now Officer Fridell, prior to September 22 of this year, had you known or had you known of the defendant prior to that time? A. Yes, I have. Q. And had you actually come into contact with him prior to that time? A. Yes. Q. I'm sorry? A. Yes, numerous times. . . . Q. Officer Fridell, on any occasions that you came in contact with him had he been involved with narcotics? A. Yes. Q. And do you recall when that was? A. On different occasions. The dates and times I don't know. . . . He used to run around with known narcotics users, come out of their houses at different times. THE COURT: What? THE WITNESS: He used to hang out at different narcotics users' pads. THE COURT: Is that your only basis? THE WITNESS: And his oral admissions of using narcotics. THE COURT: You mean prior to this arrest? THE WITNESS: Yes. Q. (By Mr. Watson) About how long had you known him? A. Approximately five years.

On cross-examination, the same witness testified:

Q. You say you have known Mr. Davis for five years? A. Yes. Q. When was it he told you that he used narcotics? A. On numerous occasions. Q. Name one. A. One time he came out of Modest Pollard's apartment. Q. How long ago was that? A. A couple of years ago. Q. Did Mr. Davis tell you that he had injured his leg and that narcotics were prescribed for him on occasion? A. Yes. Q. You never arrested him? A. No. Q. But he hung around with people that you suspected of being involved with narcotics? A. People convicted. Q. Over a period of five years? A. Yes.

Sergeant Matheson testified:

Q. And during the time you were on the police force, on the patrol and with the special squad, had you known of the defendant or his name? A. Oh yes. Q. Had you known him by person? A. Yes. Q. You had come into contact with him previously? A. Many times. . . . Q. On any of the previous occasions were narcotics involved? A. Yes.

The officers further testified that, upon entering the room, they found the appellant in the bathroom attempting to flush down the toilet cigarettes which contained marijuana. A search of his person revealed capsules containing a dangerous drug. There were two other men in the room. The officers testified that, at the time they entered the room and arrested the appellant, they believed that a felony was being or had been committed.

The trial court, relying upon this evidence, held that the officers had probable cause to arrest the appellant without a warrant, and denied the motion to suppress.

Appellant asserts that probable cause did not exist because there were two other men in the room and the officers could not have known who had committed the crime. In support of this contention, appellant cites *Johnson v. United States,* 333 U. S. 10, 92 L. Ed. 436, 68 Sup. Ct. 367 (1948). In the cited case, the officers had been advised by an informant that opium was being used in the hotel. Upon investigation, the officers detected the odor of burning opium emanating from the room occupied by the defendant. Without further evidence, the officers entered the room and arrested the sole occupant. The United States Supreme Court reversed the conviction upon the ground that this knowledge did not give the officers probable cause to believe that the occupant of the room had committed or was about to commit a felony.

■ In the instant case, when the appellant stepped out into the hallway from the room, the officers recognized him as an admitted user of narcotics and one who associated with convicted narcotics users. Through the open door of the room, they saw instruments commonly used in the administration of narcotics. They noted appellant's immediate flight back into the room upon recognizing them to be police officers. These convincing facts distinguish the instant case from *Johnson v. United States, supra,* and under the rules announced in *State v. Massey, supra,* establish probable cause to arrest the appellant.

The judgment and sentence is affirmed.

ROSELLINI, C. J., HUNTER and HALE, JJ., and RUMMEL, J. Pro Tem., concur.

October 11, 1966. Petition for rehearing denied.