[No. 38015.    Department Two.    October 13, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN RICHARD GARCIA, *Appellant*.*

*Reported in 419 P.2d 121.

*Michael D. Garvey*, for appellant (Appointed counsel for appeal).

*Charles O. Carroll* and *David A. Berner*, for respondent.

DONWORTH, J.—Appellant was convicted on each of three counts charging him with the unlawful possession and sale of marijuana, a narcotic drug. The dates of these alleged transactions were: Count 1, March 10, 1964; Count 2, March 12, 1964; and Count 3, April 1, 1964.

After his motions for arrest of judgment and, in the alternative, for a new trial were heard and denied, appellant was sentenced to a maximum term in the state penitentiary of not more than 20 years on each count, the sentences to run concurrently.

Appellant's first assignment of error raises the important legal question as to whether the trial court erred in refusing to compel the prosecution to disclose the name of an informer who was present at the time the first sale was made. It is urged for the first time on appeal that the disclosure was necessary in order for the defendant to prove a defense of entrapment to count 1 of the information. Parenthetically, it should be stated that, at the trial, appellant was represented by court-appointed counsel other than his counsel on this appeal. At the close of the state's case, appellant also rested without introducing any evidence.

In order to decide this question, it is necessary to review the testimony presented by the state in support of count 1.

Kenneth Goven, a federal narcotics agent, testified that, on March 10, 1964, he saw appellant in a certain hotel room in Seattle and purchased from him three cans (approximately 71 grams) of marijuana, for which he paid appellant $105. Prior to the sale, appellant handed him a lighted marijuana cigarette to smoke. The agent pretended to smoke it, but secretly put it in his pocket. The contents of the three cans which the agent testified he had purchased from appellant were later admitted in evidence.

On cross-examination of Mr. Goven, the following proceedings occurred:

Q. Now, when you first met Mr. Garcia in the Alaska Hotel, was he a friend of yours? A. No, sir. Q. Who introduced you to him? Mr. Glein: Objection, Your Honor. The Court: Sustained. Mr. Paul: Well, that is a preliminary question, Your Honor. The Court: Sustained. Q. Do you know a Pete Lopez or some such name? A. Yes, sir. Q. Didn't you go to see Mr. Garcia after having had a conversation with Mr. Lopez? A. No, sir. Q. Didn't you have a conversation with somebody aside from police officers before you went to Mr. Garcia's apartment? A. Yes. Mr. Glein: Objection. The Court: Sustained. Q. Do you know a man by the name of Leo? A. Yes, sir. Mr. Glein: I will object Your Honor, to this line of questions. I think it is improper and I think counsel knows it. Mr. Paul: Well, it may be improper, Your Honor, but I sure don't know it. The Court: I know what you're trying to get at is whether an informer told him. Mr. Paul: No, Your Honor. The Court: I am going to rule that the informer is protected. This man had a transaction. Where he got his information is immaterial. Q. Well, hasn't this fellow Leo been arrested? Mr. Glein: I will object, Your Honor. The Court: Sustained. Mr. Glein: I don't think this is material. Mr. Paul: Well, Your Honor, I am seeking to show that there wasn't a purchase from Mr. Garcia but that it was from some other party. The Court: Well, then, why don't you ask that? Did you purchase Exhibit 1 from Leo? or, Did you purchase Exhibit 2 from somebody else? Did you purchase Exhibit 3 from somebody else than this defendant? Q. Well, Mr. Witness, now didn't you make arrangements to purchase something from somebody other than Mr. Garcia? Mr. Glein: I will object, Your Honor. The Court: Sustained. Not what arrangements he made, it is what he did. Q. Who was supposed to get the money that you gave Mr. Garcia on March 10th? Mr. Glein: Objection. The Court: Sustained. Q. Was Leo supposed to get the— Mr. Glein: Objection. The Court: Sustained. Mr. Paul: If Your Honor please, it seems like I ought to be able to finish the question. The Court: All right, ask it. You finished it, I thought. Go ahead and ask it again. We're not trying any higher-up here, we're trying Mr. Garcia. Mr. Paul: Your Honor, the witness has testified in regard to the alleged transaction

on this particular date. I think I'm entitled to go into the circumstances surrounding that transaction. The Court: Ask him if there was anybody else in the room. Ask him if Leo was in the room, or whoever else was in the room, as to this transaction. Who told him or what else, I think is immaterial, particularly in this type of a case. Mr. Paul: Well, Your Honor, I think that I would make an offer of proof that— The Court: All right. Let the jury go out. Not in front of the jury. Go on out, please. (The following proceedings took place in the absence of the jury.) The Court: What is your offer of proof? Mr. Paul: Well, I offer to prove by this witness if permitted, with regard to this transaction of March 10th, 1964, that the witness Goven had met with somebody known to the defendant as Leo— Mr. Garcia: Leo, yes. Mr. Paul: —who lived a couple of doors away from the defendant, and that the witness Goven came in and said to Garcia, "Did Leo leave me a package?" and that Garcia said, "Yes," and that the transaction was had. The Court: What is your name? Witness: Goven. The Court: Well, I might let you ask if such a conversation took place. Mr. Paul: Well— The Court: But I am not going to let you try somebody else. This man, as it stands now, at least at this point, his testimony is that he purchased these articles from this man. What the man had in mind in doing it, if he was doing it for somebody else, still wouldn't get him out from under the law. That is a part of his defense. But I might let you ask what did the defendant say. Give the conversation. Mr. Paul: All right. Fine. The Court: Bring in the jury. (The following proceedings took place in the presence of the jury.) The Court: Now, Mr. Paul, as to each exhibit, I will allow you to ask him what conversation was had with the defendant when he met him on each occasion, but let's limit it to specific occasions. Q. On March 10, Mr. Goven, when you went to see Mr. Garcia, what did you say? You knocked on the door, did you? A. Yes, sir. Q. And did he open the door? A. Yes, sir. Q. What did you say? A. "Hello". Q. Okay. What did he say? A. We went on in the room and Mr. Garcia and I had a general conversation regarding marihuana, the price, the quantity, the amounts. Q. Did you tell him who you were? A. Yes, sir. Q. Who did you tell him you were? A. I told him I am Kenny. Q. And then what else did you say to him? Did you say, "I'm Kenny"? A. Yes. Q. Then what? A. I said, "I understand maybe

you've got a little merchandise for sale?" Q. And what did he say? A. He said, "Yes." Q. Then what? A. He reached under the stove in the cabinet and took out the brown paper bag. Q. And this is the first time you had ever seen him before? A. Yes, sir. Q. You didn't have to persuade him to do anything? A. No, sir. Q. He was ready, willing, and so forth? A. Yes, sir. Q. Did you tell him you were a tavern owner? A. I didn't tell him that; no sir. Q. Was there any other party present on this March 10th. A. Yes, sir. Q. Oh, there was? A. Yes, sir. Q. Who was present? Mr. Glein: Objection. Mr. Paul: Objection? The Court: Well, that is proper. Go ahead and ask him who was there. Q. Who was there? A. A fellow by the name of Leo. Q. And what did Leo say? A. Leo introduced me to Garcia. Q. Now, wasn't this transaction really with Leo rather than with the defendant? A. No, sir. Q. Now, on these other occasions, March 12th and April 1st, was there any third party present on those occasions? A. No, sir. Q. What is this fellow Leo's name? Mr. Glein: I will object, Your Honor. I don't think this is appropriate and I think the state has a privilege in these regards. The Court: Sustained. Mr. Paul: Well, if Your Honor please, Leo was in the room. I might have a reason to subpoena Leo if I can find out who he is. The Court: Sustained. Mr. Paul: Exception, if Your Honor please. The Court: Sure.

It is to be noted that appellant's offer of proof was an offer to prove *by this witness* (*i.e.* Agent Goven) that Leo left a package for the agent in appellant's room in the Alaskan Hotel on March 10, and that the witness said to appellant "Did Leo leave me a package?" Appellant answered "Yes," and then delivered the package to the agent.

This offer is ineffective as a basis for compelling the disclosure of Leo's identity for several reasons:

1. Agent Goven had testified in detail that the sale of marijuana on March 10 was made to him directly by appellant. It was obvious that appellant knew at the time that the offer of proof was made that there was no basis for such an offer unless the agent was willing to testify in direct contradiction to his direct testimony. In such event, he would have subjected himself to a possible charge of perjury.

2. In his brief, appellant reviews many cases relating to when a defendant is entitled to be given information as to the identity of an informer in a criminal case. These decisions all turn on whether, if the identity is disclosed, the informer's testimony would be relevant and helpful to the defendant's defense. This contention is inconsistent with the offer of proof made at the trial of this case because it did not include any offer as to what Leo might testify to if called as a witness. Appellant did not offer to show entrapment. The offer was based on the theory that Agent Goven would, if permitted to answer questions asked by the defense, repudiate his testimony previously given as to the identity of the seller and, as pointed out above, lay himself open to a possible perjury charge.

3. The principal argument in appellant's brief is that, if he knew where to locate Leo, he could subpoena him and that Leo would testify that he (Leo) sold the marijuana to Agent Goven on March 10, and that appellant did not knowingly participate in the sale.

There are two fallacies in this argument:

(a) The offer of proof stated that the informer was known to appellant as Leo "who lived a couple of doors away from" appellant. Since appellant, on March 10, 1964, was apparently living in Room 69 in the Alaskan Hotel, which is located at 2005½ Second Avenue, Seattle, and Leo lived a couple of doors from Room 69, appellant's present claim that he could not locate Leo to subpoena him as a witness at the trial seems inconsistent with his offer of proof. The reasonable inference from the offer of proof is that appellant might have learned Leo's last name and address by inquiring of the room clerk or proprietor of the Alaskan Hotel.

(b) Appellant's argument in his appellate brief is based upon the theory that (contrary to his offer of proof at trial) Leo was present at the sale and was the only witness to the transaction (other than appellant) and that, therefore, his testimony was vital to appellant's defense.

In order to understand appellant's present position, we quote from his summary of the argument on the right of a

defendant in a criminal trial to compel disclosure of the identity of an informer as follows:

1. The rule promulgated by the United States Supreme Court and applied to the states through the Fourteenth Amendment to the Federal Constitution must be followed by this court.

2. The *Roviaro* rule provides that if the unknown third party's possible testimony might be relevant and helpful to the defense of the accused, in considering all the circumstances of the particular case, then the accused has a right to learn the identity of that third person.

3. Under the circumstances of the present case the possible testimony of the third person would be relevant and helpful to the defense of the accused because:

a. Besides the federal agent, the informer-decoy was the *only* available witness to the alleged crime that occurred on March 10, 1964, unless the appellant had waived his right not to testify;

b. The unknown third person introduced the agent to the accused and, consequently, was the instrumental party to the transaction;

c. If the third person's testimony contradicted the federal agent's testimony as to the March 10th transaction, this would be highly relevant evidence as to the agent's testimony concerning the two subsequent alleged crimes;

d. The trial court, at the time it was called upon to rule on the issue, was aware that the third person was present during the March 10th transaction and was advised as to the possible testimony of that third person;

4. The overwhelming weight of authority supports the rule that when an informer-decoy is also a witness to the alleged crime, his identity is not protected.

As pointed out above, the theory of appellant's argument is based on the erroneous assumption that the offer of proof relates to Leo's possible testimony and not to that of Agent Goven.

*If* we assume arguendo (as appellant does at page 15 of his brief) that the offer of proof refers to Leo's possible testimony and that, if called as a witness by the defense, he would have contradicted the agent's testimony as to the March 10 sale, there are additional practical matters to be considered.

The inference from the offer of proof under this assump-

tion is that Leo would testify that he left the package with appellant in appellant's hotel room for delivery to Agent Goven. Upon the agent's arrival at the hotel room, the agent said to appellant: "Did Leo leave me a package?" Appellant answered "Yes," and "the transaction was had." Whether this offer of proof was intended to mean that appellant, being ignorant of the contents of the package, then delivered it to Agent Goven in Leo's absence and recieved $105 is not clear.

Appellant's entire argument on this phase of the case is based on the assumption that Leo was present in appellant's room and witnessed the delivery of the package by appellant to the agent and the payment of the money to appellant by the agent. Hence Leo, being the only eyewitness to the transaction, was a material witness who should have been made available to the defense in order to contradict the agent's testimony.

But this assumption is contrary to appellant's offer of proof, to wit, that Leo was *not* present in appellant's hotel room at the time that the transaction was had. If this be true, there was no basis for calling Leo as a defense witness.

Furthermore, the offer of proof would indicate that appellant intended to prove that Leo actually made the sale by leaving the package with appellant for delivery to the agent. If Leo should so testify, he would be confessing to the commission of a felony, which might result in his being sentenced to a maximum term of 20 years in the penitentiary.

Before being permitted to so testify, the trial court would presumably advise him of his constitutional right not to incriminate himself, and of his right to consult an attorney before answering questions pertaining to his alleged participation in this felony.

As pointed out by the trial court, even if Leo should admit his participation in the crime, his testimony would not be necessarily helpful to appellant. The offer of proof did not state that appellant was ignorant of the contents of the package which he delivered to the agent allegedly at Leo's request. The statement in the offer of proof that "the trans-

action was then had" (upon delivery of the package by appellant) could only mean that money was paid by the agent to appellant presumably for delivery to Leo.

The offer of proof did not specifically state that appellant was ignorant of the contents of the package. However, even if Leo would so testify, he would be in effect confessing to the commission of a felony in an effort to help appellant escape punishment. One would have to be extremely naive to entertain the assumption that Leo would risk a 20-year sentence in the penitentiary in order to attempt to exonerate appellant from any participation in this sale of a narcotic drug.

The result of our consideration of all the foregoing assumptions is that we are unable, under any theory consistent with the offer of proof, to hold that Leo could or would, if called as a witness, supply evidence that would be relevant and helpful to appellant or would be essential to a fair determination of the case. The offer of proof was not an offer to prove entrapment, but was an offer to prove that someone else committed the crime, too, and that Garcia was only an agent of "Leo." This would make appellant simply an accomplice to a "higher-up" as the trial court noted.

The leading case in this country (which is strongly relied upon by appellant) is *Roviaro v. United States,* 353 U. S. 53, 1 L. Ed. 2d 639, 77 Sup. Ct. 623 (1957).

In that case, the United States Supreme Court stated the applicable rule as to when a defendant may compel the disclosure or the identity of an informer in a criminal case, as follows:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the

possible defenses, the possible significance of the inform-er's testimony, and other relevant factors.[1]

The *Roviaro* case was referred to by this court in *State v. Driscoll*, 61 Wn.2d 533, 379 P.2d 206 (1963), where we said:

> In the instant case, the request came from the defend-ant at the time and in the manner hereinabove set out, and was not in any fashion thereafter renewed. The de-fendant, at the time of the request, did not advise the trial court of his proposed defense of entrapment nor undertake, in any way, to enlighten the trial court as to the materiality or relevancy of the requested disclosure. The ruling at that particular stage of the proceedings was to the effect that disclosure would not be required *at that time*. The door was thus open to subsequent show-ing and request.

For over one hundred years, there has been in effect in this state (and the Territory of Washington) the following statute:

RCW 5.60.060(5) provides:

> The following persons shall not be examined as wit-nesses:
>
> . . . .
>
> (5) A public officer shall not be examined as a witness as to communications made to him in official confidence, when the public interest would suffer by the disclosure.

Applying the rule stated in the portion of the *Roviaro* case, quoted above, to the record in the case before us, we are of the opinion that appellant did not make a sufficient showing in the trial court to justify its requiring the identity of Leo to be disclosed.

As appears from quoted portion of the proceedings at the trial and our discussion above, appellant's offer of proof was inadequate to show that Leo's testimony would have been relevant and helpful to appellant's defense. We, there-fore, hold that, balancing the public's interest in the non-disclosure against the accused's right to prepare his defense in this case, the trial court did not err in refusing to compel disclosure of the informer's identity.

---

[1] There is an exhaustive discussion of the many cases dealing with this subject in an annotation found in 76 A.L.R.2d 262 (1961).

As to count 2, Agent Goven testified that, on March 12, 1964, he purchased three more cans of marijuana from appellant in Room 69 of the Alaskan Hotel and paid him $105. At the same time and place, the agent bought from appellant 21 marijuana cigarettes for $10.50. No one else was present at that time.

With respect to count 3, Agent Goven testified that, on April 1, 1964, at about 9 p.m., he again saw appellant in Room 69 of the Alaskan Hotel, where they discussed another purchase of marijuana. They left the hotel and drove to a point near the intersection of Sixth Avenue and Jefferson Street in Seattle, where they parked. At that time, the agent gave appellant $150 for the proposed purchase of five cans of marijuana. Appellant walked away from the car and out of the agent's sight. He returned in a few minutes and told the agent that his friend was not at home so they would have to come back in a little while. Appellant then returned the money to the agent.

About 10:10 p.m., they returned and parked the car on Fifth Avenue near Jefferson Street. Agent Goven again gave the $150 to appellant, who left the car and walked up Jefferson Street toward Sixth Avenue and out of his sight. In about ten minutes, appellant returned with a brown paper bag containing five cans of marijuana.

Narcotic Detective Sprinkle of the Seattle Police Department testified that he and two other law enforcement officers observed Mr. Goven go into the Alaskan Hotel on the evening of April 1, 1964, and saw him emerge about 40 minutes later with appellant. Detective Sprinkle followed them in his car and corroborated Mr. Goven's account of appellant's activities on Jefferson Street between Fifth and Sixth Avenues on that evening.

Appellant contends that, although no one other than Agent Goven and himself were present when the two sales charged in counts 2 and 3 allegedly took place, nevertheless, the judgment and sentence should also be reversed as to the latter two counts because the identity of the informer was withheld under the ruling of the trial court with respect to count 1.

In support of this contention, appellant relies on *People v. Williams*, 51 Cal.2d 355, 360, 333 P.2d 19 (1958), which he claims is based on facts identical to the present case. We do not agree that that case is not factually distinguishable. However, the California Supreme Court, having held that the defendant was entitled to have the identity of the informer disclosed as to the *first* sale of narcotics, said as to the second transaction:

Although the informer did not witness the second transaction, it was consummated in reliance upon the prior one, and the theory of the prosecution, as sought to be established by the officer's testimony, was that the same person, allegedly defendant, committed the two offenses. If the informer had contradicted the officer's identification of defendant as to the first sale, this would have been highly material evidence to show that the officer was also mistaken in connecting defendant with the second transaction.

The failure to compel disclosure of the informer's identity resulted in a miscarriage of justice with respect to both counts.

Since, for the reasons hereinbefore stated at some length, we have held that the disclosure of the identity of the informer was properly withheld by the trial court as to count 1, it follows that the ruling in this respect as to counts 2 and 3 was also correct.

Accordingly, we are of the opinion that appellant's first and second assignments of error are without merit.

The third assignment is stated in appellant's brief as follows:

*The State Did Not Meet Its Burden of Alleging and Proving That the Subject Matter of The Transaction Was a Narcotic Drug.*

The trial court also gave instruction No. 7 (originally instruction No. 6½) to the jury (to which no exception was taken) which defined marijuana as follows:

" 'Cannabis' includes all parts of the plant Cannabis Sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or

preparation of such plant, its seeds, or resin; but shall not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination."

You are further instructed that the term "marihuana" is covered by the above definition.

You are further instructed that it is unlawful for any person to possess or sell any narcotic drug, and that Cannabis is a narcotic drug.

William J. Gowans, a chemist employed by the United States Treasury Department, after testifying to his qualifications as an expert chemical analyst, testified that he chemically analyzed the contents of each can and that all of the cans admitted in evidence contained the narcotic "Cannabis Sativa" which is commonly known as marijuana. These cans had previously been identified by Agent Goven as those received by him from appellant on March 10, 1964, March 12, 1964, and April 1, 1964, respectively, under the circumstances described in his testimony which has been referred to above.

Appellant states that RCW 69.33.010(13) (now recodified as RCW 69.33.220(13)) defines "Cannabis" as including all parts of the plant Cannabis Sativa L., whether growing or not; the seed thereof; the resin extracted from any part of such plant, etc., but shall not include the resin extracted therefrom.

Therefore, appellant contends that the state has not sustained its burden of proving that appellant sold the narcotic drug Cannabis Sativa because the state did not prove that Agent Goven did not purchase only the parts of the plant described in the above-quoted exception.[2] We

_____

[2] If appellant means to argue that the state must prove that Agent Goven did not purchase *any* non-narcotic parts of the plant Cannabis Sativa, as defined by the exception, we disagree. If *any* parts of the contents of each can were narcotic portions of the plant Cannabis Sativa, the sale of the contents is a sale of narcotics. It appears to be of no consequence in the statutory definition of narcotic, for the purposes of

agree with appellant that the state must prove that a narcotic has been sold. However, it appears to us that, if the prosecution introduced evidence to show that the cans contained substances, which chemical analysis indicated were the narcotic portions of the plant, the state has thereby presented a prima facie case which, if believed by the jury, *disproves* that only the non-narcotic portions of the plant were sold.

In his brief, appellant calls our attention to RCW 69.33.390, which provides:

> In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this chapter, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this chapter, and the burden of proof of any such exception, excuse, proviso, or exemption, shall be upon the defendant.

However, he contends that this section applies only after the state has proved that appellant had sold a narcotic drug as defined in RCW 69.33.010(13), referred to above.

Appellant's counsel on this appeal has ably and clearly presented his position as to this third assignment of error. However, we are of the opinion that the testimony of Mr. Gowans, which the jury had the duty to consider in the light of instruction No. 7 (to which no exception was taken), was sufficient, in conjunction with the containers and their contents, to establish a prima facie case of the three sales of Cannabis Sativa L., and that appellant had the burden of proving as a matter of defense that the cans sold by him contained only the parts of the marijuana plant described in RCW 69.33.010(13) as not within the statutory definition of Cannabis Sativa.

Therefore, the trial court did not err in submitting the evidence to the jury under instruction No. 7. It is to be noted that appellant's trial counsel took exception only to

this criminal statute, that other parts of the contents may be non-narcotic portions of the plant. It seems plausible that many sales may be of packages containing a mixture of narcotic and non-narcotic portions of the plant.

the giving of instructions Nos. 8 and 9, but there is no argument in appellant's brief regarding them.

In addition to the thorough presentation of appellant's contentions made in the brief filed by his appellate counsel, appellant has filed pro se a supplemental brief of 30 pages. We have considered the six assignments of error and the arguments in support thereof contained therein and are of the opinion that no reversible error on the part of the trial court has been shown.

The judgment and sentence entered by the court upon the jury's verdict of guilty as to Counts 1, 2, and 3 are hereby affirmed.

ROSELLINI, C. J., WEAVER, J., and WARD, J. Pro Tem., concur.

HAMILTON, J., concurs in the result.