[No. 951-2.    Division Two.    December 26, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. ALEXANDER CARL WHITE, *Appellant.*

*Jess E. Minium, Jr.*, for appellant (appointed counsel for appeal).

*Henry R. Dunn, Prosecuting Attorney*, and *C. C. Bridgewater, Jr., Deputy*, for respondent.

ARMSTRONG, J.—Defendant White was arrested without warrant and charged with the crime of possession of a controlled substance in violation of RCW 69.50.401. Jury trial was waived and the court considered suppression of the evidence in conjunction with the trial on the merits. Suppression was denied and the defendant was convicted and sentenced.

The primary issue in this case is whether the tip of an informant, accompanied by corroborative information gathered by the arresting officer, provided probable cause to arrest and search the defendant. We hold the arrest was valid. A second issue is whether the trial court erred in not requiring disclosure of the identity of the police informer. We affirm the trial court.

The facts reveal that at approximately 1 p.m., Chief of Police Bourdage, the one-man police department of Kalama, Washington, received a phone call from a police informant who was known to the police but whose identity was not disclosed at trial. The informant was further known to have given information leading to arrests in the past. His personal reliability was therefore not seriously questioned. The informant advised Chief Bourdage that a maroon 1965 Chevrolet pickup with a canvas back on it, and California license plates, was in town. The pickup was to be at the Gallery, a confectionery store in the 100 block on Main Street, at 2 p.m. The occupants of the pickup were stated to be in possession of "acid paper," a form of LSD, and the informant further stated that the drugs were meant for sale. Because the sheriff's office had men better trained in narcotics detection, Chief Bourdage called Deputy Bena, who arrived in about 15 minutes. The police chief told the deputy sheriff the details of the call and advised him he had seen the pickup in question in town and that young

people were riding in it. The chief then answered an ambulance call and next appeared on the scene at about the time of the arrest of the defendant by Deputy Bena.

There was a marked difference between the testimony of Chief Bourdage and the testimony of Deputy Bena. Chief Bourdage testified that the unidentified informant did not advise him of any underlying circumstances from which the informant concluded the contraband was where he claimed it was, nor did the informant advise the chief that he had direct personal knowledge of the facts related.[1] Deputy Bena, however, stated that Chief Bourdage told him, prior to the arrest, that the informant had personal contact with the individuals who were going to make the sale.[2]

---

[1]Chief Bourdage testified:

Q Relate to the Court, please, what you heard on the telephone.
A This subject informed me that this '65 Chev pickup with a canvas back on it, California license plates, was in town and the subjects were in possession of narcotics and that they were to be at the Gallery at 2:00 p.m. to make a sale.

. . .

THE COURT: Well, let me ask a question. Chief, did the informant give you any information at all as to how he had this knowledge that these drugs were with these subjects?
A He didn't, the subject didn't explain this to me any more than that this vehicle would be—
THE COURT: He just made a flat statement and he didn't tell you how he, or the subject knew or got—
A How they got the information, no. I was never informed of that. Just that the subject stated that there would be a vehicle, a vehicle would be in town and would have this stuff in the vehicle.

. . .

Q Do you know what contact the informant had with the defendant just prior to his information to you?
A I don't know if he ever had any.

[2]Deputy Bena had no contact with the informant, with reference to this case, prior to the arrest of the defendant. On cross-examination of Deputy Bena, the following interrogation occurred:

Q Are you ready? Did Officer Bourdage ever tell you by conversation the underlying circumstances of where the informant got his information, yes or no?
A Yes.
Q And you recall this conversation?
A Yes.
Q You state—can you state it to the Court?

After receiving the information from Chief Bourdage, Deputy Bena immediately drove to the Gallery and parked. At approximately 5 minutes after 2 p.m. he observed the Chevrolet pickup in the 100 block on Main Street. The pickup had slowed down almost to a stop at the Gallery. Believing that he had probable cause to make an arrest based upon the informant's tip to Chief Bourdage, Deputy Bena stopped the vehicle.

Without a search warrant, Deputy Bena searched the driver of the vehicle, and the passenger, defendant White. He found five amphetamine tablets in the defendant's wallet. He found nothing on the driver or in the vehicle. The driver was the person who had been driving the pickup around town and the passenger was a local resident.

■   Once again in recent months we are called upon to interpret the "two-pronged" *Aguilar-Spinelli* test which enunciates the constitutional criteria against which an informant's tip must be measured for the purpose of determining probable cause. *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). Whether the question involves one of probable cause for an arrest or search without a warrant, as in this case, or involves a magistrate's consideration of whether a warrant should be issued, the analysis is basically the same. *Spinelli v. United States, supra.* The general requirement of a search warrant is relaxed when an automobile is involved. *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970).

■   In *State v. Chatmon,* 9 Wn. App. 741, 515 P.2d 530 (1973), we considered the second prong of the *Aguilar-Spi-*

---

A Officer Bourdage advised me that the informant advised him that the information received by him was through personal contact, that a sale was going to take place at 2:00 p.m. in front of the Gallery involving the occupants of the maroon 1965 Chev.

Q Personal contact with whom?

A That was never stated.

Q Was it the driver?

A It was never stated, just the occupants of the vehicle.

*nelli* test—the reliability of the informant. That requirement is not seriously challenged in the instant case. Here we are considering the first prong of the *Aguilar-Spinelli* test—did the tip contain sufficient underlying facts or circumstances from which the informant concluded that a crime would be committed, so that the officer receiving the tip had a reasonable basis to conduct the search and make the arrest, or does the record disclose no more than a declaration of suspicion and belief, which is legally insufficient? *State v. Patterson*, 83 Wn.2d 49, 52, 515 P.2d 496 (1973). We find no more than a conclusion or declaration of suspicion and belief, and that the tip *alone* did not support a finding of probable cause to arrest the defendant.

To constitute probable cause for a search or arrest, information conveyed to the police, even by a *reliable* informant, must be tested to determine that the *tip* is reliable. The reliability of the information may be established by a showing that the informant based his assertions on direct personal observations, or upon the reasonableness of the underlying circumstances, sources, or facts upon which the informant reached his conclusion. In every case, the informant's information must go beyond a mere unsupported conclusion, belief, or suspicion that the illegal activities are occurring or will occur. *Aguilar v. Texas, supra; Spinelli v. United States, supra; State v. Patterson, supra.*

In considering the conflicting statements of Chief Bourdage and Deputy Bena we are forced to the conclusion that Deputy Bena could know no more about the "tip" than Chief Bourdage knew and told him. The trial court apparently reached the same conclusion because the findings of fact were based upon the testimony of Chief Bourdage and did not include the "personal contact" testimony of Deputy Bena.

Although the tip alone was insufficient to support a finding of probable cause, a further consideration is whether the observations of Deputy Bena subsequent to the tip may be used to support a finding of probable cause. For example, the United States Supreme Court has held that

where the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not be supported by the tip alone. *Whiteley v. Warden,* 401 U.S. 560, 567, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971); *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959).

To find probable cause by this "bootstrap" approach, the additional information must in some sense be corroborative of the informer's tip that the arrestees committed the felony or were in the process of committing the felony. *Whiteley v. Warden, supra.* In the *Whiteley* case, the court noted that the most the additional information there tended to establish was that either the sheriff or the informant knew the defendants and the kind of car they drove. That information was held insufficient to establish probable cause. *Whiteley v. Warden, supra* at 567. By contrast, the *Draper* case involved a reliable informant's tip that contained a detailed physical description of the arrestee, and more importantly, a description of his past movements as well as an assertion that the subject would be returning to town by train on one of the following two mornings. When the police observed a person matching the description alight from a train as predicted, the court in *Draper* found probable cause to arrest. *Draper v. United States, supra* at 310.

We believe that the facts of the instant case most closely resemble those in *Draper v. United States, supra.* Here a reliable informant provided a detailed description of the vehicle, and related that the occupants of this vehicle would be holding dangerous drugs for sale at 2 p.m. at a particular location. Although the record does not disclose the underlying circumstances from which the informant reached this conclusion, when Deputy Bena observed the described vehicle slow down almost to a stop at the exact time and place predicted by the informant, thus corroborating the collateral detail of the informer's tip about the suspects and their movements, he could reasonably infer that the information about the crime itself was gained in a

reliable way. We therefore hold there was probable cause to make the arrest and search, and that the evidence obtained was properly admitted as evidence.

■ Defendant's second assignment of error is that the trial court should have required disclosure of the identity of the police informer.

In *State v. Driscoll*, 61 Wn.2d 533, 379 P.2d 206 (1963), the court held that an accused who seeks disclosure of the identity of an informer has the burden of showing that circumstances exist which justify an exception to the state's privilege of nondisclosure. The purpose of the privilege is, of course, to preserve the anonymity of the informant, and thereby encourage informers to disclose their knowledge to the police. *State v. Massey*, 68 Wn.2d 88, 92, 411 P.2d 422 (1968). The constitutional issue presented has been noted by the United States Supreme Court as follows:

> The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro v. United States*, 353 U.S. 53, 62, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957). This balancing test was adopted in Washington in *State v. Driscoll, supra*, and *State v. Massey, supra*.

In the instant case, defendant essentially contends that the identity of the informant was necessary for him to challenge the existence of probable cause to make the arrest. For example, defendant argued that he needed to question the informant to determine whether his information was obtained through personal knowledge or guesswork, and to resolve the apparent conflict in the testimony of Officer Bourdage and Deputy Bena.

Applying the *Roviaro* rule to the record in this case, we are of the opinion that the defendant did not make a suffi-

cient showing to justify requiring disclosure of the inform-ant's identity. We indicated previously that it was permissible for the trial court to sustain a finding of probable cause, although the trial court did not adopt the testimony of Deputy Bena that the informant had provided the underlying circumstances of the tip. We note that in *McCray v. Illinois,* 386 U.S. 300, 308, 18 L. Ed. 2d 62, 87 S. Ct. 1056 (1967), the court quoted with approval the following language from the Supreme Court of New Jersey:

> It seems to us that the same approach is equally sufficient where the search was without a warrant, that is to say, that it should rest entirely with the judge who hears the motion to suppress to decide whether he needs such disclosure as to the informant in order to decide whether the officer is a believable witness.

*State v. Burnett,* 42 N.J. 377, 388, 201 A.2d 39, 45 (1964); *see also State v. Garcia,* 69 Wn.2d 546, 419 P.2d 121 (1966); *State v. Malbeck,* 69 Wn.2d 695, 419 P.2d 805 (1966); *State v. Edwards,* 6 Wn. App. 109, 491 P.2d 1322 (1971).

Balancing the public's interest in nondisclosure against the accused's right to prepare his defense in this case, we hold that the trial court did not err in refusing to compel disclosure.

Affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied January 22, 1974.

Review denied by Supreme Court March 5, 1974.