CALOGERO, Justice.
Defendants are charged with having committed the crime of gambling as defined by R.S. 14:9o.[1] The state’s case was initially aided by information received from a confidential informer, and later by the successful execution of a search warrant on December 20, 1976.
*1192 The defendants by motion for a bill of particulars sought, among other things, the identity of the state’s confidential informant. The state refused to disclose this information and after a hearing on the defendants’ motion the magistrate in the trial court ordered the state to disclose to the defendant the informer’s identity.
The state sought writs contending that the trial judge erred in requiring the disclosure of the name of the confidential informant. Writs were granted. State v. Helmke, 346 So.2d 220 (La.1977).
According to the averments of the affidavit in support of the search warrant application, a reliable confidential informant contacted Vice Officers Lawless and Barre on December 14, 1976 and advised that he had been placing bets on various sporting events with defendants, Milton J. Helrnke, Jr., also known as Junior, and his son Milton J. Helrnke, III by dialing certain telephone numbers. The informant told the officers that he had placed his last bet two days earlier, on December 12, 1976. Investigations precipitated by this information led to verification of the phone numbers as belonging to the Helmkes. The investigations also disclosed that both Helmkes had previous misdemeanor arrests and that Helrnke, Jr., ran a Magazine Street bar at which six persons were arrested for gambling years ago. The officers met with the informant again on December 15, 1976 and were informed that Helrnke III was taking the bets that day.
The informant stated that Junior only worked at night except on Saturdays, Sundays and holidays. The informant accompanied the officers to their office where he complied with their request that he place a bet while the officers monitored the call from an extension phone in the office. The informant placed the call and the informant asked the party who answered the call if he was Milton and received an affirmative answer. After identifying himself, the informant placed a wager on a horse; “Milton” repeated the bet, stated “I’ve got it” and the conversation was ended. The vice officers again monitored a telephone bet placed by the informant on December 17, 1976 with “Milton.”
On December 20, 1976, the officers, applied for a warrant to search the Helrnke apartment for gambling paraphernalia and related items. The warrant issued. Pursuant to the execution of the warrant the officers confiscated gambling paraphernalia at the location and arrested the defendants.
The trial court ordered the state to disclose the informant’s identity after concluding that the incidents of December 15th, 17th and 20th constituted a single continuous crime, and that the informant did in fact take part in the crime. The trial court felt compelled by the United States Supreme Court’s decision in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) to rule as it did.
The privilege of concealing the identity of a confidential informer serves several important purposes in contemporary society. It works to benefit the informer and thereby the state. The aid to the informer is obvious. The aid to the state is an increase in effective law enforcement. In State v. Dotson, 260 La. 471, 256 So.2d 594 (1971) we discussed this privilege more fully as follows:
The informer privilege is the privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning crime. The privilege is founded upon public policy and seeks to advance the public interest in effective law enforcement. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); Seher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938); 21 Am.Jur.2d, Criminal Law, § 332, pp. 359-360; Gutterman, The Informer Privilege, 58 J.Crim.L.C. & Pol.S. 32.
Because of its social importance, courts zealously guard the privilege. They order disclosure of the name of a confidential informant only under exceptional circumstances for the prevention of an injustice. The burden is upon the defendant to show exceptional circumstances justifying disclosure. State v. Green- *1193 baum, 257 La. 917, 244 So.2d 832; State v. Boles, 246 N.C. 83, 97 S.E.2d 476; State v. Driscoll, 61 Wash.2d 533, 379 P.2d 206; 21 Am.Jur.2d, Criminal Law, § 332, p. 360. On the question of whether the circumstances warrant disclosure, much discretion is vested in the trial court. Durham v. United States, 403 F.2d 190 (9th Cir. 1968); Anno: Accused’s Rights-Informer-Identity, 76 A.L.R.2d 262, 279.
This privilege granted to the government, however, is not an absolute one. Exceptions of course do exist. The United States Supreme Court in Roviaro v. United States, supra, discussed the several exceptions to the privilege of withholding an informer’s identity and their underlying rationales. 353 U.S. 60-62, 77 S.Ct. 623, 628-29. The Court noted that it was impossible to delineate a “fixed rule” according to which the issue of informer disclosure should be governed. The appropriate criteria subject to consideration in such situations was discussed as follows:
We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual’s right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer’s testimony, and other relevant factors.
A situation found to warrant disclosure of an informer’s identity was where it, or disclosure of the contents of the informer’s information, would be relevant and helpful to the defense of the accused or “essential to a fair determination of a cause.” 353 U.S. 60-61, 77 S.Ct. 628. In Roviaro, supra, the defendant was charged on two counts: sale of heroin to a confidential informant, John Doe; and, receiving, concealing, and transporting heroin. After the trial court denied the defendant’s pre-trial request for disclosure of the identity of the confidential informant the defendant was tried and convicted on both counts. At Roviaro’s trial the government relied on the testimony of several police officers and federal narcotics agents. Their testimony recited the following sequence of events. Late one evening the confidential informant was to meet the defendant to conduct an illegal transaction. Prior to this meeting the police made arrangements with the informer to have one of the officers hidden in the trunk during the transaction. With the concealed officer in place the informer proceeded to his meeting with the defendant. After picking up the defendant the informer then proceeded to a new location where the defendant exited from the car only to return with a package. (It was later determined that the package contained heroin.) The officers then arrested both the defendant and the informer. The officer who had been concealed in the trunk of the car also testified as to what he had heard while in the trunk and as to what he had seen after the car was stopped for the completion of the illegal transaction. In finding that the trial court had erred in denying the disclosure of the informer’s identity, the United States Supreme Court found that the identity of the informer was highly relevant to the evidence which would be produced at trial and thus concluded that disclosure was required as a necessity to the accused’s defense and a fair determination of the case.
In the case at hand defendants are charged with gambling activity on December 20th. The confidential informer was not and is not alleged to have been a witness to any activity on the date. At this time, however, we cannot categorically state that there could be no possibly permissive purpose for which the evidence of the informant’s placing bets on December 15th and 17th would be admissible at the defendants’ trial for activities occurring on December 20th. To the extent that such might be admissible, the defendants have presented a plausible argument that disclosure of the informant’s identity is necessary to the preparation of their case. Defendants contend that such a result is dictated by Roviaro.
*1194 We need not resolve that question in this case, however, due to the state’s stipulation in oral argument before this Court that no evidence whatever concerning the telephone calls made on December 15th and 17th by the confidential informant would be introduced at the forthcoming trial of defendants, whether in rebuttal, and whether by the informer himself or by the police who monitored the calls. In light of such stipulation there is no need or requirement that defendants be given the identity of the confidential informant. This stipulation precludes any possible unfairness in the determination of the guilt or innocence of the defendants resulting from non-disclosure. The ruling of the trial court ordering disclosure of the informer’s identity will thus be reversed.[2]
It is therefore ordered that the decision of the trial court requiring disclosure of the confidential informer’s identity be reversed and the case remanded to the trial court for further proceedings in accordance with this opinion.

. Milton J. Helmke, III and Milton J. Helmke, Jr. were charged in a single bill of information with having conducted as a business a football gambling handbook. Under a separate docket number Mercedes Kerner was charged with having conducted as a business, a “game, contest, lottery and contrivance, in that she did encourage, promote and aid diversfe] persons . . ., to bet and wager upon the results of running, trotting and pacing horse races . in order to realize a profit.” The respective bills of information each set forth illegal gambling activities on the 20th of December, 1976; the Helmkes “in the City of New Orleans,” Mercedes Kerner at an apartment on St. Charles Avenue. The respective crimes apparently arose out of a single incident and the cases were consolidated in the court below.

. Since our decision is based on concessions made in oral argument in this Court this opinion should in no way be taken as a suggestion that the trial judge necessarily erred. His decision may well have been correct under the circumstances confronting him at the time. We venture no opinion in this respect.