[No. 8147.  Department Two.  December 23, 1909.]

THE STATE OF WASHINGTON, *Respondent*, v. E. T.
MONTGOMERY, *Appellant*.[1]

CRIMINAL LAW—TRIAL—MISCONDUCT OF PROSECUTOR—WITNESSES—
TESTIMONY OBTAINED BY DURESS.  It is prejudicial error for the prose-
cuting attorney, after the prosecuting witness had denied the charges
against the defendant, to state in the presence of the jury that the
witness had made many contrary statements to him and had been
tampered with and bought, to examine the witness at length as to
the statements, which the witness admitted having made but in-
sisted were false and obtained by duress, and finally, after tempo-
rarily excusing the witness, to state to her that she could be im-
prisoned for perjury; and evidence given by her against the defend-
ant thereafter is obtained by duress and cannot sustain a conviction.

CRIMINAL LAW—TRIAL—DUTY OF PROSECUTOR.  The prosecuting
attorney is a *quasi* judicial officer and it is his duty to see that
one accused of a public offense is given a fair trial.

Appeal from a judgment of the superior court for Spo-
kane county, Huneke, J., entered July 10, 1908, upon a
trial and conviction of the crime of rape.  Reversed.

*Merritt, Oswald & Merritt*, for appellant.
*Fred C. Pugh* and *V. T. Tustin*, for respondent.

RUDKIN, C. J.—The appellant was convicted of the crime
of rape on a female child under the age of 18 years, and
prosecutes this appeal from the final judgment of the court.
Numerous errors are assigned, in the admission and exclu-
sion of testimony, in the giving and refusing of instructions,
and in the failure of the court to instruct the jury in writing;
but few, if any, of these rulings are likely to occur on a re-
trial, and for that reason we deem it unnecessary to discuss
or consider them at this time.  Nor do we find it necessary
to review the testimony, further than to say that it is suffi-
cient to sustain the verdict, if believed by the jury.  But

[1]Reported in 105 Pac. 1035.

whether the appellant was guilty or innocent he was entitled to a fair and impartial trial, according to the forms of law, and we are constrained to hold that this right was denied him.

The prosecuting witness, a girl of the age of 15 years, was taken into custody about three months before the trial, and was confined in the juvenile detention room from the time of her arrest until after the trial. She was called as a witness for the state at the opening of the trial, and testified that the appellant never had sexual intercourse with her at any time or place. The prosecuting attorney thereupon stated to the court, in the presence of the jury, that the witness had stated the contrary to him many, many times; that the witness had been tampered with, and bought, etc. He was then permitted to ask the witness leading questions. In answer to such questions the witness freely admitted that she had told the prosecuting attorney that the appellant had sexual intercourse with her on three different occasions, but insisted that she was frightened into making such statements. The prosecuting attorney was then permitted, over the objection and protest of the appellant, to interrogate the witness at length, relative to statements she had made wherein she admitted that the appellant had sexual intercourse with her at different times and places, with all the details and attendant circumstances. The witness admitted the making of all such statements, but insisted that they were absolutely false. She was thereupon withdrawn from the stand, to be recalled some hours later. After leaving the stand, she was first taken to the prosecuting attorney's office, and thence to the detention room and placed in charge of the matron. Before leaving her, the prosecuting attorney told her that he could send her to the penitentiary for perjury, and after he left, the matron told her that she would find the prosecuting attorney a very good friend but a very powerful enemy. The witness herself testified that the matron interceded with the prosecuting attorney in her behalf and asked him not to send her to jail.

The respondent contends that the prosecuting attorney and the matron only insisted that the witness should speak the truth, but the record shows only too clearly that the witness was given plainly to understand that her testimony given in the morning was not true, and that she should adhere to and reaffirm the statements made to the officers before the trial. The record clearly shows, also, that the witness was put under duress, and that her testimony was not voluntarily given when she took the stand the second time and testified against the appellant.

Notwithstanding the foregoing facts, the respondent earnestly insists that the weight of the testimony of this witness was for the jury, in the light of all the surrounding circumstances, and that this court may not interfere with the verdict. We readily concede that the weight of testimony is ordinarily for the jury, but this case presents the far more important question, whether a prosecuting attorney may threaten and intimidate witnesses, and place testimony obtained by duress before a jury, against one accused of a public offense. The duty of such officers has often been defined by the court.

In the *Appeal of Nicely* (Pa.), 18 Atl. 737, the court said:

"The district attorney is a *quasi* judicial officer. He represents the commonwealth, and the commonwealth demands no victims. It seeks justice only,—equal and impartial justice,—and it is as much the duty of the district attorney to see that no innocent man suffers as it is to see that no guilty man escapes. Hence, he should act impartially. He should present the commonwealth's case fairly, and should not press upon the jury any deductions from the evidence that are not strictly legitimate."

In *Hurd v. People*, 25 Mich. 404, Christiancy, C. J., said:

"The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent. His object, like that of the court, should be simply justice; and he has no right to sacrifice this to any pride of

professional success. And however strong may be his belief of the prisoner's guilt, he must remember that, though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community."

In *Biemel v. State*, 71 Wis. 444, 37 N. W. 244, the court said:

"He is an officer of the state, provided at the expense of the state, for the purpose of seeing that the criminal laws of the state are honestly and impartially administered, unprejudiced by any motives of private gain, and holding a position analogous to that of the judge who presides at the trial. Such is the view taken of the office of prosecuting attorney by the courts of this country as well as England, and we think it is the true view of his position."

"It is the duty of the prosecuting attorney to treat the accused with judicial fairness; to inflict injury at the expense of justice is no part of the purpose for which he is chosen. Unfortunately, however, we sometimes meet with cases in which these officers appear to regard themselves as the counsel for the complaining party rather than the impartial representatives of public justice." Cooley, Constitutional Limitations (7th ed.), p. 440, note 2.

See, also, *Curtis v. State*, 6 Cold. (Tenn.) 9; *March v. State*, 44 Tex. 64; *Gandy v. State*, 24 Neb. 716, 40 N. W. 302.

The conduct of the prosecuting attorney on the trial of this case did not measure up to these requirements. His statement, in the presence of the jury, that the prosecuting witness had been tampered with and was bought was both prejudicial and unwarranted. After the prosecuting witness had admitted that she had made contradictory statements out of court, her further examination as to the details of these statements, to the effect that the appellant had sexual intercourse with her at different times and places, with all the attendant circumstances, could have no other object than to bring these extra judicial statements before the jury, to the manifest prejudice of the accused, and such a result must have been intended. Furthermore, courts of common law

have always excluded confessions extorted from prisoners, because, as said by Judge Cooley, the common law "recognized fully the dangerous and utterly untrustworthy character of extorted confessions, and was never subject to the reproach that it gave judgment upon them." Cooley, Constitutional Limitations, p. 442.

If extorted confessions are dangerous and utterly untrustworthy in character, is not extorted testimony open to the same objection? In *State v. McCullum*, 18 Wash. 394, 51 Pac. 1044, this court condemned the practice of extorting confessions from persons accused of crime by confining them in dark cells until a confession was wrung from them, and we must now add our condemnation to the practice of extorting testimony from witnesses by like means or by threats or duress of any kind. Such acts are declared criminal in some states, and public officers are not exempt from their provisions. *Gandy v. State, supra*. While it is important that the appellant should be punished for his crime if guilty, it is of far greater importance that settled principles designed for the protection of life and liberty should not be overthrown; and if persons accused of crime cannot be convicted without using against them testimony wrung from unwilling witnesses by threats of criminal prosecution and imprisonment, it is better far that they should go free than that such practices should receive the sanction and approval of the courts.

It is not our purpose to condemn the zeal manifested by the prosecuting attorney in this case. We know that such officers meet with many surprises and disappointments in the discharge of their official duties. They have to deal with all that is selfish and malicious, knavish and criminal, coarse and brutal in human life. But the safeguards which the wisdom of ages has thrown around persons accused of crime cannot be disregarded, and such officers are reminded that a fearless, impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can hope for. Their devotion to duty is not measured,

like the prowess of the savage, by the number of their victims. Believing that the appellant was not accorded a fair and impartial trial in the court below, the judgment is reversed and a new trial ordered.

PARKER, DUNBAR, CROW, and MOUNT, JJ., concur.