[No. 22735. Department Two. December 30, 1930.]

THE STATE OF WASHINGTON, *Respondent*, v. MARIE CARR, *Appellant.*[1]

[1]Reported in 294 Pac. 1013.

*W. B. Mitchell,* for appellant.

*Chas. W. Greenough* and *Frank Funkhouser,* for respondent.

Beeler, J.—The following brief chronological statement will aid in an understanding of the proceedings in the case at bar, as well as in the companion case of *State v. Carr, post* p. 83, 294 Pac. 1016.

On February 14, 1930, appellant was charged by information with the crime of grand larceny, was found guilty by a jury, and has appealed from the judgment and sentence on the verdict. On February 19, 1930, she was again charged under the bad check statute, Rem. Comp. Stat., § 2601, subd. 2, in the companion case, No. 22736. On February 27, the two cases were consolidated on appellant's motion, and a few days thereafter trial was had resulting in a conviction on both informations. Thereafter, the trial court, on March 11, 1930, granted appellant a new trial, on both informations. On March 20, the court sustained a demurrer to the information in cause No. 22736, and immediately thereafter, and on the same day, the prosecuting attorney filed a substitute information containing four counts, under the insufficient funds statute, Rem. Comp. Stat., § 2601-2. On April 7, 1930, these two consolidated cases were again tried, resulting in a verdict of conviction on both informations. Thereupon appellant moved for a new trial which was denied as to the case at bar, but granted as to cause No. 22736, which cause was again tried on May 7, resulting in a conviction on counts 1, 2, and 3, of the information, and an acquittal as to count 4.

We shall now consider the matters relating to the case at bar.

█ Appellant relies on four assignments of error, in one of which she urges misconduct on the part of

the deputy prosecuting attorney representing the state at the trial, and claims that as a result thereof she was deprived of a fair and impartial trial. This contention must be sustained. The record discloses that the trial deputy on numerous occasions injected highly prejudicial matter into the record. This is especially true as to his opening statement and closing argument to the jury. The following sufficiently illustrates such misconduct:

"Mr. Funkhouser: We know this woman (Marie Carr) sold this man Wyrick a phonograph for $255 two years ago when phonographs were standing on their last legs and giving way to radios. Two hundred fifty-five dollars was a lot of money. Mr. Mitchell: Now, your honor, I want to make an objection to him arguing anything on that because he asked the question of the witness and it is a collateral matter, and it was answered, and they put no evidence at all in the case about anything except the fact that they bought a phonograph and it was paid for. Mr. Funkhouser: He can have his exception. Mr. Mitchell: He can't argue that. It is not in evidence. Mr. Funkhouser: It is in evidence. Both these papers are in evidence. Mr. Mitchell: I object to him arguing any matter pertaining to it because it is a collateral matter and has got nothing to do with the case, and the fact they bought it and paid for it has nothing to do with the case. The Court: I don't remember just what the testimony was, but confine yourself to the testimony. Mr. Funkhouser: This woman (Marie Carr) sold this man (W. R. Wyrick) a phonograph for $225. He paid over the cash, gave her a good check, drawn on a good bank, and it was honored, too. He goes back a year later and said so and so; I bought that victrola. She said, 'I am sorry. I will fix you up.' Mr. Mitchell: Your honor, I object to that because that is not in evidence at all and I am making an objection. The Court: I don't know what the evidence was. Confine yourself to the evidence. Mr. Mitchell: Your honor, this man will not do that unless your honor instructs him to stick to it. I know him. I want the right to have my

objection and take my exception. Mr. Funkhouser: I bought a radio myself—I mean a victrola myself when I ought to have been buying a radio; couldn't afford it; So let me tell you something— Mr. Mitchell: Your honor, I object to that statement. I object to this man stating about deals he had where we haven't got any chance to cross-examine him, and there is no evidence in this case about it. Mr. Funkhouser: Then I will withdraw that statement and put it this way. This woman (Marie Carr) has been represented up until some weeks ago by one of the most brilliant men at this bar, but in going through this muck and mire, he is not in the case, and that is the best compliment that can be paid to a member of the bar of this state. *There are some things that some lawyers will not do—* Mr. Mitchell: Just a minute. I object to that kind of argument and I want an exception to it and tell the jury to disregard it. It is absolutely incompetent. The Court: The request is denied.''

And again, Mr. Funkhouser said:

''If you want the law enforced; if you want this sort of thing in the city of Spokane, Spokane county, state of Washington, stopped, then ˙do your duties under the court's instructions. Much has been said about a civil case. Every blessed count has been passed upon not only by the visiting court, but a court heretofore, and they have been ruled upon. Mr. Mitchell: If your honor please, I object to what the court has passed on before. . . . Mr. Funkhouser: Just mark down an exception. Give him an exception.''

This court has frequently stated the rule as to what constitutes misconduct on the part of counsel. The following cases are decisive on the question:

In *State v. Devlin,* 145 Wash. 44, 258 Pac. 826, the prosecutor put the fact before the jury that the defendant's picture was in the rogue's gallery. The case was reversed. We said:

"The question involved is that of a fair and impartial trial. In *State v. Pryor,* 67 Wash. 216, 121 Pac. 56, this court has said:

" 'A fair trial consists not alone in an observation of the naked forms of law, but in a recognition and a just application of its principles.'

"It is the law of the land, a right vouchsafed by the direct written law of the people of the state. It partakes of the character of fair play which pervades all the activities of the American people, whether in their sports, business, society, religion or the law. In the maintenance of government to the extent it is committed to the courts and lawyers in the administration of the criminal law, it is just as essential that one accused of crime shall have a fair trial as it is that he be tried at all, whether he be guilty or not, has his picture in the rogue's gallery or not. In the *Pryor* case just referred to, it was said that it must be remembered, as stated in *Hurd v. People,* 25 Mich. 404, 'that unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained is unjust and dangerous to the whole community.' "

In the case of *State v. Montgomery,* 56 Wash. 443, 105 Pac. 1035, 134 Am. St. 1119, we said:

"The safeguards which the wisdom of ages has thrown around persons accused of crime cannot be disregarded, and such officers are reminded that a fearless, impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can hope for. Their devotion to duty is not measured like the prowess of the savage, by the number of their victims."

See, also, the following: *Snider v. Washington Water Power Co.,* 66 Wash. 598, 120 Pac. 88; *Rogers v. Kangley Timber Co.,* 74 Wash. 48, 132 Pac. 731; *State v. Arnold,* 130 Wash. 370, 227 Pac. 505; *State v. Bozovich,* 145 Wash. 227, 259 Pac. 395, and *State v. Heaton,* 149 Wash. 452, 271 Pac. 89.

Inasmuch as this case is remanded for retrial, we deem it advisable to dispose of the additional questions presented by appellant's assignments of error No. 1 and No. 2, and a brief reference to the facts is essential to an understanding of the questions raised thereby.

Appellant operated a music shop at Hillyard, Washington, where she bought and sold victrolas, radios and pianos; that the prosecuting witness, W. R. Wyrick, was in the market to purchase a Haddorf Grand piano, a rather expensive make; that appellant did not handle this piano, but a merchant, Mr. Jason, had the agency, and appellant represented to Wyrick that Jason demanded a down payment of $500 before he would place an order with the wholesaler in the east; that Wyrick owned two old pianos, a McPhail and a Chickering, and after some negotiations between appellant and Wyrick, it was understood orally between them that the price of the Haddorf piano was to be $1,275, and that he could turn in his two old pianos as part payment; that a short while prior to October 18, 1929, the appellant advised Jason that the purchaser of the Haddorf piano was Wyrick, and on learning this fact Jason consented to place the order without a down payment; that appellant never communicated this fact to Wyrick; that on October 18, 1929, Wyrick gave appellant $400 and on November 2, $100, a total of $500, $395 of which he was told by appellant would be turned over to Jason as part payment on the piano; that the piano was shipped and arrived in Spokane the latter part of November, 1929, and thereupon Jason advised Wyrick of its arrival, and then for the first time he learned that appellant had appropriated the sum of $395 to her own use.

As to the facts above detailed, the parties are in accord, but do not agree as to the remaining facts, which

are: The state contends that the understanding between Wyrick and appellant was substantially as follows: Wyrick was to turn in his two old pianos and be given a credit of $683; that $105 of the $400 advanced on October 18 was in full payment of a victrola which he purchased for his own use, and the balance of $295 and the $100 advanced on November 2, a total of $395, plus the further sum of $197, which was to be paid within thirty days, together with the credit of $683, totaled the sum of $1,275, the agreed sale price of the piano. On the other hand, appellant insists that the understanding between them was that Wyrick agreed to purchase two victrolas at a cost of $356, the piano at $1,275, a total of $1,631; that he was to turn in two old pianos and be given a credit of but $500; that Wyrick paid $400 on October 18, $100 on November 2, and a few days later $115 additional, which items, plus the $500 credit, amount to the sum of $1,115, leaving a balance due on the piano of $516.

Moreover, the state contends that appellant was the agent of Wyrick, and that he gave her the money on October 18, and November 2, with the distinct understanding that $105 thereof was in full payment for the victrola, and that she would immediately turn over the balance of $395 to Jason, who would then order the piano. On the other hand, appellant insists that the relation of principal and agent did not exist between Wyrick and appellant, but that the relation was one of seller and purchaser, and that consequently she had a perfect right to retain the $395 until Wyrick paid the full purchase price of the piano.

Coming now to assignment of error No. 1, wherein it is urged that the trial court erred in refusing to grant a directed verdict. There is no merit in this contention, for the plain and sufficient reason that there is an abundance of evidence in the record, if be-

lieved, tending to establish the relation between the prosecuting witness and appellant as that of principal and agent. This being so, no error was committed in submitting the case to the jury.

In assignment No. 2, appellant claims that the court erred in refusing to give her requested instructions numbered 4, 5, 6, and 11. We find no merit in appellant's contention as to the refusal of the court to give instructions 4 and 5. Both instructions as submitted contained an incorrect statement of the law. As to instruction 6, the substance of that instruction, as requested, presented to the jury the question of the good faith of the appellant in causing a new piano to be ordered and sent to Spokane. Now, the question to be determined by the jury under the evidence was not one of good faith on her part in causing the piano to be ordered and sent to Spokane, but rather whether she openly and avowedly, under claim of title preferred in good faith, was justified in appropriating to her own use the sum of $395. The same applies with equal force to appellant's proposed instruction No. 11. These instructions were properly rejected.

The facts and circumstances in the case at bar are quite similar to the facts and circumstances in the case of *State v. Rolette,* 94 Wash. 94, 161 Pac. 1042. In that case we approved the following instruction:

"The laws of the state of Washington provide that, in any prosecution for larceny, it shall be a sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith, even though the claim is untenable.

"Therefore, if you find from the evidence that the defendant withheld or appropriated to his own use the property or money described in the information, that he did so openly and avowedly under a claim of title preferred in good faith, that is, honestly believing that he was legally entitled to it as his own, then your verdict should be not guilty."

It will be observed that the instruction there approved was a statement of the law as it appears in § 2608, Rem. 1915 Code, which provides:

"In any prosecution for larceny it shall be a sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith, even though the claim be untenable." [Rem. Comp. Stat., § 2608.]

Therefore, in the event of a retrial appellant is entitled to have the jury instructed in accordance with her theory of the case, which we understand to be that the money was appropriated by her openly and avowedly under a claim of title preferred in good faith. We hold that in view of the defense made by the appellant it was the duty of the court to include § 2608, *supra,* or its equivalent in an instruction to the jury.

For the reasons assigned, the cause is remanded for a new trial.

MITCHELL, C. J., MILLARD, FULLERTON, and BEALS, JJ., concur.