[No. 40068. Department One. January 9, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. NORMAN ALLEN GIBSON, *Appellant*.*

*Reported in 449 P.2d 692.

*Jack A. Richey,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Jerry Brian Riess,* for respondent.

POYHONEN, J.†—This is an appeal from a conviction of burglary in the second degree.

Just prior to midnight on April 7, 1967, a silent burglar alarm within the K & M Market in downtown Renton sounded at the Renton police station. Within minutes the market building was completely surrounded by police. An entry hole was discovered which had been made by removal of a vent and the breakage of surrounding concrete blocks. At 12:05 a.m. a screen door opened, and the appellant emerged from the building. He was dressed in khaki pants, khaki shirt with top buttoned, and was wearing brown jersey gloves. His clothes were dusted with dry cement, and there were small concrete particles in the cuffs of his pants. He was carrying a flashlight. He gave his name as "John Doe." No wallet or identification was found on his person.

Mr. Cowan, the owner of the market, testified that prior to leaving the store at 11:30 that evening, he made a complete search of the premises, including the store itself, the storage room, and the washroom, to make sure that no persons were inside; that he made sure all doors were locked and the alarm system set; that there was no entry hole into the building when he departed. He further testified that he was careful to secure the premises because his store "held the record" for burglaries in the area.

---

†Judge Poyhonen is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Appellant testified in his own defense. His defense was that he had attended his father's funeral earlier in the day; that he felt badly and consumed considerable amounts of intoxicants during the remainder of the day; that he was riding about with a friend whose station wagon he was considering purchasing; that he felt ill and asked his friend to stop at the K & M Market so that he could purchase Contac pills for a cold; that on entering the market he became ill, went into the washroom, fainted, and did not come to until he heard the noise of someone breaking through the wall; that his immediate reaction was that someone was trying to burglarize the place and that he should depart without delay to avoid becoming involved in any such burglary.

Appellant's first assignment of error is that the prosecuting attorney committed reversible error in referring to the appellant in final argument as an "habitual criminal" and that a mistrial should have been granted.

The exact words used by the prosecutor were "on the verge of being what I would term an habitual criminal." The appellant had not, in fact, ever been adjudged an habitual criminal.

In our opinion the language used came dangerously close to reversible error if note is not taken of the circumstances under which it was uttered.

 It must be remembered that it is the duty of a prosecutor, as a quasi-judicial officer, to see that one accused of a crime is given a fair trial, and it is his duty to refrain from statements, not supported by the evidence, which degrade a defendant or tend to inflame or prejudice a jury against him. *State v. Van Luven*, 24 Wn.2d 241, 163 P.2d 600 (1945); *State v. Carr*, 160 Wash. 74, 294 Pac. 1013 (1930); *State v. Susan*, 152 Wash. 365, 278 Pac. 149 (1929); *State v. Montgomery*, 56 Wash. 443, 105 Pac. 1035 (1909). In *State v. Rose*, 62 Wn.2d 309, 382 P.2d 513 (1963), a characterization of the defendant as a "drunken homosexual" was held reversible error. In *Case v. North Carolina*, 315 F.2d 743 (4th Cir. 1963), language referring to the defendant as a "mad dog" and "a convict" was held inflam-

matory and prejudicial. The closing paragraph in *State v. Montgomery, supra,* could well be on the desk of every prosecutor as a constant reminder of the high duties of his office.

The appellant does have a prior criminal record. On cross-examination he admitted a felony conviction of theft of government property in Honolulu in 1956; conviction of a misdemeanor in Marin County, California in 1958; conviction of grand larceny in this state in 1961; plea of guilty to three counts of forgery in this state in 1965. The court instructed the jury that a prior criminal record could be considered by them only in determining what weight and credibility should be given the appellant's testimony in this case.

During closing arguments to the jury and after appellant's counsel had completed his argument, the appellant asked for and received permission to address the jury on his own behalf. In an argument of about 1400 words, the appellant discussed in detail his previous criminal record, related the circumstances of each crime, sought to explain some of them away or at least to minimize his culpability in connection therewith, and in addition, detailed a history of parole violations.

During the prosecutor's final rebuttal argument the following occurred:

> [Prosecutor] We are not dealing here with an individual who is ignorant or uneducated. We are not dealing with an individual who is, you might term, recalcitrant. We are dealing with an individual who is anything more than in the estimation of the state but a number by the prior convictions on the verge of being what I would term an habitual criminal. Mr. Richey: Your Honor, I object and ask for a mistrial. The Court: Well, the jury should disregard the statement of counsel other than to understand that it is an argument of counsel, not evidence. Mr. Riess: [the prosecutor] In conjunction with the Court's words I should also remind you that the statements by the defendant to you in argument were not evidence. The statements by defense counsel in closing argument were not evidence. They are merely argu-

ments. Evidence, that was presented to you from the witness stand. This is what you are to consider.

■ We do not understand the prosecutor's remarks as inferring that appellant was an habitual criminal in the legal sense that he had been so adjudged. They were invited by the appellant's own lengthy discussion of his prior difficulties with the law, and we read them to mean that it was the prosecutor's feeling that the appellant was getting very close to the point where committing criminal acts could become a habit. We hold that, under the particular circumstances here, they were not such as to deprive the appellant of a fair trial.

Appellant's second assignment of error is that his motion for a new trial on the ground of newly discovered evidence should have been granted.

After trial a booking slip was produced showing that appellant had 25 cents on his person at the time he was booked into the King County jail. During trial a number of police officers testified that appellant had no money when arrested, and some other officers testified that they could not recall that he had any money. This put into issue the credibility of appellant's testimony that he went into the K & M Market to make a purchase.

Our review of the evidence satisfies us that the appellant was bound to know, and did know, at the time of trial that the booking slip showed that he had small change when booked. It was his duty to inform his counsel of that fact, and had he done so, the slip could have been very easily produced at trial. The booking slip was newly discovered evidence to appellant's counsel but not to the appellant. In view of the unusually active part that appellant played in the conduct of the trial, it seems rather strange that he did not inform his counsel of a fact known to him.

■ This court held in *State v. Adams*, 181 Wash. 222, 43 P.2d 1 (1935), that to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has

been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching. *See also State v. Peele,* 67 Wn.2d 724, 409 P.2d 663 (1966); *State v. Mesaros,* 62 Wn.2d 579, 384 P.2d 372 (1963).

The evidence in support of the motion for a new trial falls far short of the minimal requirements and fails completely to meet the second and third requirements set forth in *State v. Adams, supra.* The assignment is without merit.

The third assignment of error is that the trial court erred in allowing a witness to testify as to his personal conclusions. We find this assignment without merit.

Officer Smith of the Renton police, in describing a photograph taken at the scene, testified:

Upon entering the building, this is on the end door, this is where a lock had been apparently knocked off, it was laying on the floor to the right of the door. Beside that was a piece of block which appeared to have come from the hole.

Upon objection, the trial court ruled that this was descriptive language only, and we agree.

Appellant's fourth assignment of error is that the information should have been dismissed because of the long delay between the original charge and the trial.

The appellant was arrested on April 3, 1967, and bound over to superior court on May 4, 1967. The information was filed May 9, 1967. Trial was set, without objection, for July 12, 1967, 64 days later. On May 9, 1967, the parole board suspended appellant's parole, without bail. Prior to the July trial date the appellant and his counsel entered into an agreement providing for appellant's return to the state penitentiary on parole revocation in lieu of trial. About the middle of August, 1967, appellant decided that he wanted to stand trial rather than have his parole revoked. On August 21, 1967, he was released from custody on a writ of habeas corpus, apparently because of unreasonable delay on the part of the parole board. A trial date was set for November 6, 1967, which setting was agreeable to appel-

lant's counsel. On August 28, 1967, 7 days after release, appellant was arrested for a burglary committed while awaiting trial, was subsequently convicted, and appeal from that conviction is pending before this court.

RCW 10.46.010 requires a defendant to be tried within 60 days of the filing of an information unless trial is delayed on the defendant's own application or unless other good cause for delay is shown.

■ We are of the opinion that the appellant waived the 60-day requirement of the statute when he agreed to a parole violation in lieu of trial. Until August 21, 1967, he was in custody awaiting parole board action, not trial. When he announced in August that he had changed his mind and desired to be tried, the court then set the first convenient date, November 6, 1967, without objection.

In the meantime, appellant could have remained at liberty had he not been arrested on a subsequent charge. We are of the opinion that both waiver and good cause for delay have been shown.

The appellant has had a fair trial, and the judgment is affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and McGOVERN, JJ., concur.

---

May 5, 1969. Petition for rehearing denied.