[No. 40334.    Department One.    August 21, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. DOROTHYA YOUNG, *Appellant.**

*Critchlow, Williams, Ryals & Schuster,* by *Eugene G. Schuster,* for appellant.

*C. J. Rabideau* and *Laurence S. Moore,* for respondent.

LEAHY, J.†—Dorothya Young appeals from a conviction resulting from a jury verdict finding her guilty of grand larceny.

The Pasco police department had been notified of an alleged burglary of several wigs from a wig shop in the area, which occurred December 29, 1967. Approximately 5

*Reported in 458 P.2d 8.

†Justice Leahy is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

days later the police department received an anonymous telephone call informing them that appellant was on her way to Seattle with some stolen wigs and was driving a white Oldsmobile, bearing Alaska license plates. Captain Kenneth Hutton of the Pasco city police who was off duty was informed of the call. He had known appellant as Dorothy Cloy for many years and was aware of her past record of two arrests for shoplifting. He also knew that she had a white Oldsmobile, and had recently returned to Pasco from Alaska. As a result Captain Hutton directed that a teletype message be sent out containing the above information to all towns located between Pasco and Seattle. The message gave a description of appellant and the automobile, including the license number, and stated that appellant was a possible suspect in an alleged wig theft.[1] Shortly after the message was received by the Yakima police, the above described car was seen in Yakima and when it pulled into a service station two police cars followed it in. Appellant was seated on the passenger's side and the car was driven by one Billy Ransom. The driver was asked for identification and in order to supply it, appellant opened the glove compartment of the car and the police saw a wig therein. Ransom and appellant were then arrested and taken to the Yakima police station where the car, with appellant's oral consent, was searched and approximately 27 wigs and wiglets were found in the car, which were later identified as those taken from the wig shop. Appellant was also wearing a wig which was similarly identified.

Appellant's first assignment of error deals with the issue of whether there was probable cause for the Yakima author-

---

[1]"STOLEN FROM PASCO 12-29-67 APPROX. 2000.00 DOLLARS WORTH OF WOMENS WIGS. THIS IS THE WHOLESALE VALUE OF THESE WIGS. POSSIBLE SUSPECT DORTHY CLOY AKA DORTHY FELLOWS COLORED FEMALE DOB 8-6-38 APPROX. 5-4 INCHES 130 LBS. SUSPECT THOUGHT TO BE ENROUTE FROM PASCO TO SEATTLE SINCE 12.01 DATE. DRIVING A 66 OR 67 WHT OLDS ALASKA LIC. 89622. SUSPECT THOUGHT TO HAVE WIGS IN CAR WITH HER. NO WARRANTS ON FILE AT THIS TIME. REQUEST CAR BE CHECKED FOR STOLEN MERCHANDISE IF LOCATED. SUSPECT IS KNOWN TO OUR DEPARTMENT FROM PRIOR LARCENIES. IT IS ALSO POSSIBLE SUSPECT MAY BE ON PAROLE FROM BACK EAST BUT THIS IS UNKNOWN AT THIS TIME."

ities to arrest her and search her car. She argues that the Yakima police stopped her only because of the information in the teletype message sent from Pasco, and that such message was not sufficient to constitute probable cause and, consequently, should never have been sent.

She further argues that the Pasco authorities were acting only on information given to them by an anonymous caller, and that such information did not provide a sufficient legal basis to establish probable cause to believe that a felony had been committed by appellant. Appellant asserts the anonymous information was a basis for further investigation, but was not legally sufficient for the arrest of appellant and the ensuing search of her automobile. In summary, appellant contends that the Pasco police did not have sufficient probable cause to believe a felony had been committed; the sending of the teletype message to Yakima police without further investigation was improper; the arrest and search was illegal; and the evidence found as a result of the illegal search should have been suppressed.

In *State v. Wilson,* 70 Wn.2d 638, 641, 424 P.2d 650 (1967), this court stated:

> The authority of police officers to make an arrest without a warrant is restricted to (1) where there has been a misdemeanor committed in the presence of an arresting officer, or (2) when the arresting officer has probable cause to believe that the person or persons arrested have committed a felony. *State v. Hughlett,* 124 Wash. 366, 368, 214 Pac. 841 (1923); *State v. Davis,* 69 Wn.2d 127, 417 P.2d 622 (1966). The constitutional standard for searches and seizures without a warrant requires that the search must be substantially contemporaneous with and incident to a lawful arrest, and under all circumstances of the case must be a reasonable one.

In addition, the court held in *State v. Baxter,* 68 Wn.2d 416, 413 P.2d 638 (1966) at 420:

> A case of arrest without a warrant necessitates striking a balance between considerations respecting rights of individuals and considerations respecting the responsibility of police officers for the safety and security of all members of the community. The test is one of reasonableness considering the *time,* the *place,* and the *pertinent circum-*

554

*stances. Plancich v. Williamson,* 57 Wn.2d 367, 357 P.2d 693 (1960). The standard of probable cause should be given a nontechnical application, *i.e.,* it is to be applied in the light of everyday experience, rather than according to strict legal formulae. See Davis, Federal Searches and Seizures, at 271 (1964).

In *Brinegar v. United States,* 338 U.S. 160, 93 L. Ed. 1879, 69 Sup. Ct. 1302 (1949), it is stated:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . .
>
> . . .
>
> The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests.

In *State v. McClung,* 66 Wn.2d 654, 404 P.2d 460 (1965), this court upheld an arrest when officers, acting on an anonymous tip, apprehended a robbery suspect. The court found that aside from the anonymous information the police had comparable additional facts and held that anonymous information may supply the basis for probable cause when it is supported by other facts then known to the police or subsequently learned by investigation. *See also, Little v. Rhay,* 68 Wn.2d 353, 413 P.2d 15 (1966) and *State v. Bantam,* 163 Wash. 598, 1 P.2d 861 (1931).

Police have the right, incident to a lawful arrest, to search persons arrested and the area where the arrest is made. Evidence of the crime found as a result of that search is admissible. *State v. Massey,* 68 Wn.2d 88, 411 P.2d 422 (1966); *State v. Green,* 70 Wn.2d 955, 425 P.2d 913 (1967).

Whether a search and seizure is reasonable, depends upon the facts and circumstances of each case and is to be judged in the light of everyday experience, not on a technical legal basis.

■ It should be further noted that, while the search of a car as compared with the search of a dwelling is still subject to the test of "reasonableness," a search of a car

cannot be identically treated because of the car's mobility. *See Preston v. United States,* 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881 (1964), where the court stated at 366-67:

> Common sense dictates, of course, that questions involving searches of motor cars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar.

In the instant case the officers had probable cause to believe that a felony had been committed. In fact they saw one of the later identified stolen wigs in the glove compartment, which was voluntarily opened by appellant. Their search of the car, with appellant's consent, after it was taken to the police station was reasonable, and the evidence obtained as a result of the search was legally admissible. The wig which was worn by appellant at the time of her arrest was admissible on the basis of the same reasoning.

■ Appellant next assigns error to the trial court's refusal to grant appellant a new trial on the ground of newly discovered evidence. A motion for a new trial on the basis of newly discovered evidence is within the sound discretion of the trial court and we will not overturn that ruling unless it can be shown that the trial court abused its discretion. *State v. Franks,* 74 Wn.2d 413, 445 P.2d 200 (1968).

In *State v. Gibson,* 75 Wn.2d 174, 178, 449 P.2d 692 (1969), this court held:

> [T]hat to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching.

At the trial Billy Ransom testified that after the initial theft of the wigs he did not see them again until the day of the arrest. Appellant bases her motion for a new trial on an affidavit of one Essie Green, contending that if Essie Green had testified, her testimony would have set forth that Ran-

som had possession of the wigs between the time of the theft and his arrest.

We fail to see how this information could, in any manner, change the result of the trial as to appellant. The only purpose of such testimony would be to impeach the testimony of Ransom. Such alleged impeachment would only be cumulative since Ransom had already been impeached by the introduction of his criminal record at the trial. In addition, several witnesses testified that Ransom had made statements to them which were contrary to his trial testimony. We find the assignment to be without merit because the alleged new evidence does not meet requirements 1, 4, or 5 as set out in *State v. Gibson, supra.*

In order to attempt to substantiate her claim that some of the identified wigs were her own, appellant tried to introduce at the trial certain photocopies of sales slips and a letter written to her enclosing the photocopies and identifying them as sales slips of transactions involving the servicing or styling of wigs prior to the alleged theft. These exhibits were not admitted because of their obvious hearsay and with this ruling we must agree. The photocopies and accompanying letter were not properly identified as to the source and contents, and were introduced solely to support the claims of ownership of the wigs made by appellant. The authenticity of the exhibits was verified only by appellant. The fact that she might have been able to identify her signature on two of them does nothing to raise the exhibits to the status of admissibility. Consequently, their admission would have been improper. *See* 5 Meisenholder, Wash. Prac. § 381 (1965).

Appellant's last assignment of error is also without merit. She contends that the trial court erred in directing her counsel not to refer to the number of years of incarceration to which she would be subject if convicted. She contends that such an argument to the jury should have been allowed in that they would then have been more cautious and careful in finding her guilty.

■ As we said in *State v. La Porte,* 58 Wn.2d 816, 822, 365 P.2d 24 (1961):

557

We do not approve of counsel's mentioning the penitentiary, for, in a case such as this, the jury may not consider the possible penalty in determining defendant's guilt.

For the reasons stated above, the judgment is affirmed.

HUNTER, C. J., WEAVER, HAMILTON, and McGOVERN, JJ., concur.