THE STATE OF WASHINGTON, *Respondent*, v. TERRY CLIFFORD
ELLISON, *Appellant*.*

*Warner, Pierce & Peden* and *B. Gray Warner*, for appellant.

*Charles O. Carroll* and *John R. Cuningham*, for respondent.

FINLEY, J.—This is an appeal from conviction, judgment, and sentence for armed robbery. Two main issues are presented: (1) whether there was probable cause for appellant's arrest, and (2) whether he was denied the right to have his own attorney at a police station lineup.

There had been a rash of armed robberies of motels in the general area of the main highways just south of Seattle. At approximately 1 a.m., Saturday morning August 24, 1968, police officers were patroling the Pacific Highway airport area south of Seattle. The officers knew that the recent robberies (including one the previous weekend at the Swept Wing Motel located on the Pacific Highway adjacent to Seattle-Tacoma Airport) had been committed (a) by four black males (b) using a late model red fastback automobile, (c) armed with handguns and a sawed-off double-barrel shotgun. Officers Wardell and Evans were assigned to the area of the Hilton Motor Inn located near the airport just across Pacific Highway South from the Swept

*Reported in 467 P.2d 839.

Wing Motel. Their assignment was twofold: *generally*, they were to look for the late model red fastback automobile occupied by four male blacks—reportedly the automobile and the individuals involved in the series of robberies; *specifically*, Officers Wardell and Evans were staked out to prevent a robbery at the Hilton Motor Inn.

Officers Wardell and Evans, who had been in the coffee shop, were walking from the main entrance of the Hilton Motor Inn to reenter their unmarked police car parked nearby. They observed a late model red fastback automobile parked directly in line with the main entrance to the Hilton Motor Inn and somewhat oddly facing toward the Pacific Highway. The officers proceeded to their nearby car, and from that vantage point continued their surveillance of the red fastback. They later testified that initially it appeared to them that the car was occupied by two black males—one seated behind the wheel and the other crouched down outside the car on the right, or passenger, side with the automobile door open. Officer Wardell testified that it appeared to him the individual crouched on the passenger side had a gun stuck in the waistband of his trousers. Very shortly the officers observed a third black male wearing a long-length black jacket (later identified as Ellison) exit from the Hilton and approach the red fastback. The officers testified it appeared to them that no hand was visible from one sleeve of the man's black jacket but that as the man entered the car the barrel of a gun seemed to be protruding from it. There is some conflict in the testimony as to whether a gun barrel actually was protruding from the sleeve of the man's black jacket. When the third man entered the red fastback automobile it left the motel. The police officers followed cautiously.

The red fastback took an irregular or unusual route. It went north on the Pacific Highway to South 170th Street where it turned east to Military Road, stopped, then crossed Military Road, and proceeded to 53rd South and commenced a right turn. Apparently at this point the occupants saw a deadend sign. The car backed, turned left, and

headed north on 53rd. In the meantime, Officers Wardell and Evans had notified by radio the other police cars assigned to the "stakeout" operation. After travelling approximately three blocks north on 53rd the fastback was confronted with another deadend situation and started to turn around. The officers, still in cautious pursuit, stopped their car, backed into a nearby driveway, and stopped. The red fastback pulled up and stopped at the driveway in front of the police car. One man got out and, according to the officers, with his hand in his pocket, approached the police officers in their parked automobile and asked for directions to the freeway. When this occurred, Officer Wardell covered the man with his pistol. At about this time, Officer Evans approached the parked red fastback and found it occupied not just by two but by three additional black males. Officer Evans observed what appeared to be part of a shotgun on the right front floorboard of the car. As Officer Evans was approaching the car, other police vehicles assigned to the "stakeout" mission arrived on the scene. Sergeant Frank Chase who had been briefed as to the foregoing pertinent facts placed the four black males under arrest. A sawed-off shotgun was found in the car and later introduced at trial. No handguns were found.

Subsequently a lineup was held at the King County jail. Nine individuals, similar in height and appearance, were in the lineup. The defendant was advised that a lineup was scheduled. There is testimony that he stated he did not have an attorney but he desired one to be appointed to represent him at the lineup. The prosecuting attorney's office informed Judge Dore's court of the need for an attorney at the lineup. Mr. David Berner of the Seattle Bar was appointed by the court to represent the defendant at the lineup. Mr. Berner had served previously in this capacity on a number of occasions. He testified subsequently that there were no irregularities in the lineup in terms of the standards of *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967). Two witnesses at other robberies attended the lineup and identified the defendant.

Another robbery witness who had not attended the lineup was able to positively identify the defendant at trial.

Two assignments of error merit comment: (1) that there was a lack of probable cause for the arrest of the defendant and his three black male confederates in the red fastback, and (2) that the defendant was denied the right to have his own attorney represent him at the police lineup.

■ Relative to probable cause, this court has frequently referred to statements of the Supreme Court in *Brinegar v. United States*, 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949):

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.
>
> . . .
>
> These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

*See State v. Young*, 76 Wn.2d 551, 458 P.2d 8 (1969). We have not condoned practices of arrest on suspicion, or for investigation, and in *State v. Miles*, 29 Wn.2d 921, 190 P.2d 740 (1948), this court stated: "An officer may not arrest simply because he has some fleeting idea or suspicion that the individual has committed a felony."

The facts set out above reveal significant circumstances

clearly identifiable with the recent armed robbery of the Swept Wing Motel: namely, the time of night involved; the fact it was a weekend; the discovery of the suspect automobile in the area under special police patrol, its color, body-style, and late model; and its four black male occupants. In addition, there is the unusual way in which the automobile was parked at the main entrance to the Hilton Motor Inn, the furtive manner of its occupants as observed by the officers, and the erratic route taken in leaving the motel. In short, we are convinced that all of these circumstances constituted more than merely a basis for "some fleeting idea or suspicion that the individual has committed a felony," and that probable cause existed for the arrest of the appellant.

We are likewise unimpressed with appellant's second assignment of error. He was apprised in advance that there would be a lineup. When asked, he said he did not have an attorney and desired that one be appointed to represent him. Competent counsel in the person of Mr. David Berner of the Seattle Bar was appointed to represent the defendant and, in our judgment, represented him competently in relation to the lineup by the standards of the *Wade* case as we understand them.

The judgment of the trial court should be affirmed. It is so ordered.

ALL CONCUR.