599 P.2d 840

**STATE of Arizona, Appellee,**

v.

**Bernard Ross PAWLEY, Appellant.**

**No. 1 CA–CR 3150.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 3, 1979.

Rehearing Denied Aug. 15, 1979.

Review Denied Sept. 13, 1979.

John A. LaSota, Jr., former Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne W. Kappes, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

After a jury trial, the defendant, Bernard Ross Pawley, was found guilty of the crimes of possession of marijuana for sale and possession of a narcotic drug. He appeals, presenting the following issues for consideration:

(1) Did the trial court improperly refuse to strike for cause three prospective jurors who had law enforcement backgrounds?

(2) Was the defendant entitled to be present when the court and counsel discussed a note received from the jury after the jury began its deliberations?

(3) Did the trial court err in refusing an in camera inspection of an exhibit previously admitted into evidence?

(4) Was defendant denied effective assistance of counsel?

(5) Was there sufficient evidence to submit to the jury the question of defendant's knowledge that Percodan was a narcotic?

The conviction for possession of marijuana for sale is reversed; the conviction for possession of a narcotic drug is affirmed.

On April 1, 1977, Phoenix police officers searched Pawley's apartment pursuant to a search warrant. Pawley was not present at the time of the search. Seized in the search, and later admitted into evidence at the trial, was approximately two and one-half pounds of marijuana leaf, stems and seeds (which formed the basis of defendant's conviction for possession for sale). Also seized and admitted were several letters, a quantity of various-sized plastic bags, a set of scales, a sifter, a phone bill, Pawley's driver's license, an "imitation" burlap bag, some wrapping paper, a door key, some cigarette rolling papers, and three yellow tablets (later identified as Percodan and which formed the basis of the conviction for possession of a narcotic drug).

The marijuana was discovered by the officers in various locations throughout Pawley's kitchen and bedroom, and comprised sixteen exhibits at trial. The seizures ranged in size from the smallest of 419 milligrams, to the largest of 367 grams. Many of the quantities of marijuana were already in individual containers when seized (i. e., a bag, a jar), but a substantial quality was discovered loose by the officers and bagged by them. For example, the 367 gram quantity was discovered loose in a drawer in the bedroom of Pawley's apartment.

When Pawley returned to his apartment complex, he was placed under arrest. Pawley admitted that the apartment where the seizures occurred was his, and admitted to smoking marijuana. His defense at trial was consistent with what he told the police officers at the time of his arrest—that he was a heavy user of marijuana, smoked thirty marijuana cigarettes a day, but did not sell marijuana.

Further facts will be noted as necessary for resolution of the issues on appeal.

## THE JURY PANEL

Pawley first assigns error in the trial court's refusal to strike from the jury panel, for cause, three persons with connections to law enforcement agencies. One of the prospective jurors was a deputy with the Maricopa County Sheriff's Office, assigned to the fugitive section. The second panel member was formerly a policeman in California and at the time of trial was a reserve

officer with the Glendale, Arizona Police Department. Finally, one of the panel members disclosed on *voir dire* that he was a computer programmer at time of trial, but had been a deputy sheriff in Los Angeles County until 1971.

Defense counsel moved to strike these three potential jurors for cause, based on their prior and current connections with law enforcement. The trial court denied the motion. On appeal, Pawley argues that the trial court's denial of the motion was reversible error as it forced him to exhaust his peremptory challenges in order to exclude the three panel members.

A challenge for cause is an appropriate means of disqualifying a potential juror where "there is reasonable ground to believe that a juror cannot render a fair and impartial verdict . . . ." Rule 18.4(b), Arizona Rules of Criminal Procedure. However, the trial court is in the best position to make that determination, and we will not overrule it absent a clear abuse of discretion. *State v. Rose,* 121 Ariz. 131, 589 P.2d 5 (1978); *State v. Narten,* 99 Ariz. 116, 407 P.2d 81 (1965), *cert. denied,* 384 U.S. 1008, 86 S.Ct. 1985, 16 L.Ed.2d 1021 (1966).

A trial court is not required to grant a motion to strike for cause merely because a potential juror is shown to be involved in law enforcement. *See State v. Brosie,* 24 Ariz.App. 517, 540 P.2d 136 (1975), *aff'd,* 113 Ariz. 329, 553 P.2d 1203 (1976). Standing alone, such an involvement does not compel the conclusion that the panel member will be unfair or partial. *State v. Radi,* Mont., 578 P.2d 1169 (1978).

█ There is nothing in the record of this case to indicate that the three panel members sought to be excluded for cause were not, in fact, fair and impartial. Each potential juror was questioned by the trial judge regarding his ability to be fair and impartial, in light of his professional background. Each stated his belief that he could judge the evidence fairly and impartially. While such statements are not necessarily controlling, *see Priestly v. State,* 19 Ariz. 371, 171 P. 137 (1918), with nothing on the record to support defendant's position

other than the professional backgrounds, the ruling of the trial court will not be disturbed on appeal. *See State v. Arnett,* 119 Ariz. 38, 579 P.2d 542 (1978).

## COMMUNICATION BY COURT WITH JURY

Pawley next contends a communication between the court and the jury which took place after the jury had retired, outside his presence and without notice to him, constituted reversible error.

After the jury had retired, a note was sent from the jury to the trial judge. It read: "Can we open the plastic bag containing a letter, item 12–A?" The note was signed by the jury foreman.

A proceeding was conducted at which the judge, counsel for the state, counsel for the defendant and a court reporter were present. A transcript of the proceeding was made. After hearing arguments from counsel on the proposed response to the jury's note, the court sent a note to the jury reading: "Mr. [jury foreman], the answer is 'yes'; however, please return all contents in the plastic envelope. Stan Goodfarb, Judge." There is nothing in the record to indicate that Pawley was present at this time or had been notified of the note from the jury, and he urges that these omissions are reversible error.

The general rule in Arizona is often stated that a trial judge commits error in a criminal case by communicating with jurors after they have retired to deliberate, unless counsel and the defendant have been notified and given an opportunity to be present. *State v. Lamb,* 116 Ariz. 134, 568 P.2d 1032 (1977); *State v. Robin,* 112 Ariz. 467, 543 P.2d 779 (1975); *State v. Werring,* 111 Ariz. 68, 523 P.2d 499 (1974); *State v. Burnetts,* 80 Ariz. 208, 295 P.2d 377 (1956); *State v. Corrales,* 121 Ariz. 104, 588 P.2d 846 (App. 1978). However, a review of these cases is necessary to determine whether the presence of the defendant is always mandated.

The rule that the defendant be given notice and an opportunity to appear originated in Arizona in those cases where the

trial judge physically entered the jury room and orally communicated with the jury, the rationale being that under such circumstances, the likelihood of the judge influencing the jury out of the presence of the defendant is so great that actual prejudice will be presumed. *State v. Burnetts, supra; State v. Werring, supra.*

The rule requiring that the defendant be given an opportunity to be present has also been invoked in those cases where the defendant was not notified of the communication with the jury and an inadequate record was made at the time of the proceedings. *See Bustamante v. Eyman,* 456 F.2d 269 (9th Cir. 1972); *State v. Corrales, supra; cf. State v. Davis,* 117 Ariz. 5, 570 P.2d 776 (App.1977) (under circumstances of case, communications between trial judge and jury, without notice to defense, not reversible error where complete record of communications kept). None of the dangers of having to base an appeal on an incomplete record are present here. The trial judge in this case scrupulously preserved the record. When the note was received, he notified defense counsel and the prosecuting attorney, and held a proceeding which was transcribed by a court reporter. After the note was read into the record, counsel argued their respective positions regarding the appropriate response, then the trial judge drafted a reply to the jury and read the reply into the record. If the trial judge erred, his error is perfectly documented for scrutiny on appeal.

The rule requiring an opportunity for the defendant to be present has also been applied in situations where the jury, after retiring, requests that certain instructions be repeated, *see Bustamante v. Eyman, supra;* or asks for additional substantive instructions, *see Fillippon v. Albion Vein Slate Co.,* 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853 (1919); Rule 19.2, Arizona Rules of Criminal Procedure; or requests that portions of the record be repeated, or questions regarding the evidence be answered, *see State v. Perez,* 115 Ariz. 30, 563 P.2d 285 (1977); *State v. Robin, supra; State v. Armenta,* 112 Ariz. 352, 541 P.2d 1154 (1975). In each of these cases, a personal confrontation occurs between the court and the jury potentially touching upon the fundamental relationship between an accused, the court, and the people who judge him. Fairness requires that the defendant be given the chance to attend, and possibly participate in the proceedings against him before the jury; also important is the opportunity for the jury to observe the defendant throughout the proceedings. *Bustamante v. Eyman, supra. See also State v. Perez,* 26 Ariz.App. 500, 549 P.2d 595 (1976), *vacated,* 115 Ariz. 30, 563 P.2d 285 (1977).

■ The rule requiring that a defendant be given an opportunity to be present should not be mechanically applied to situations where the rationale for his presence does not exist. Here, the defendant's legal position was represented and protected by the presence of counsel. There was no personal interaction between judge and jury, with its attendant dangers of untoward influence. Finally, there was a meticulously maintained record which would reflect any prejudice to the defendant. Under these circumstances, we find no error in the procedure adopted by the trial court. We now move to consideration of whether the trial court's response to the jury's question was the right one.

## THE TRIAL COURT'S RESPONSE TO THE JURY'S QUESTION

Pawley makes two related assertions of error involving the handling of the exhibit the jury sought to inspect.

Before trial, defendant made a motion to suppress the items seized in the search by police. The basis for the motion was that the search warrant was allegedly defective. The trial court denied the motion. At trial, defense counsel lodged a continuing objection to all of the state's exhibits based upon the same ground urged in the pretrial motion.

Exhibit 12–A, the exhibit which later prompted the note to the trial judge from the jury, was made up of two handwritten messages, folded into thirds and stapled together, and sealed in a transparent plastic

bag. As admitted, some of the handwriting was legible, but much of it was hidden. During the testimony of the seizing officer, the following exchange took place at trial as Exhibit 12- A was offered into evidence:

"Q. [Prosecuting attorney]: I will show you what's been marked as Exhibit 12–A. Can you identify that then?

"A. Yes. It has my complete name, serial number, DR number.

"Q. Would you describe that item please.

"A. Yes. As I recall it is two letters to Bernie Pawley.

"Q. Where did you find that?

"A. This was on the floor of the bedroom area in a cardboard box.

\*   \*   \*   \*   \*   \*

"Q. I offer Exhibit 12 in evidence, 12–A in evidence.

"[Defense counsel]: May I see it, counsel?

"[Prosecuting attorney]: Surely.

"[Defense counsel]: No objection except as to the prior understanding.

"The Court: Exhibit 12–A will be admitted."

The "prior understanding" apparently referred to the continuing objection concerning failure to suppress all physical evidence.

After retiring, the jury sent the trial judge the note discussed above. The response thereto was discussed on the record by the trial judge and counsel for both the defendant and the state:

"[Defense counsel]: It's my recollection that the reason for admitting it in the first place was to show residency, that he lived at that address on the envelope. It is not my impression that the letter was admitted for other purposes because the contents of the letter were relevant. I failed to inspect the letter inside the sealed envelope or bag or whatever it is at the time it went in and I would request an en-camera [sic] inspection of the contents before we decide whether to let it go to the jury. It's [sic] contents may be hearsay and may be prejudicial to the defendant.

"[Prosecuting attorney]: I am not sure how appropriate it would be in reconsidering the admissibility of the evidence at this time, which is what defense counsel is asking the Court to do. The Exhibit was admitted without objection at the time of the trial.

"THE COURT: I think the Court feels that the admission of the item is, as stated, it was admitted and therefore admitted for all purposes and therefore the Court can only answer the question as 'Yes', because it's admitted for all purposes, therefore I am going to write on the bottom of it, not the answer yes, but please retain the contents, and the envelope. The answer is 'Mr. [jury foreman], the answer is "yes"; however, please retain all contents in the plastic envelope. Stan Goodfarb, Judge.'"

It is apparent from the record that despite defense counsel's recollection, the exhibit was not admitted for any limited purpose.

The defendant now asserts that it was error for the trial court to deny the request for an in camera inspection, and to permit the contents of the envelope to be studied by the jury.

Apparently, the trial court was of the opinion that it had no discretion, once the exhibit had been admitted into evidence, to keep that exhibit from the jury's scrutiny in the jury room. The rule in Arizona is to the contrary. As was stated in *Town & Country Securities Co. v. Place,* 79 Ariz. 122, 125, 285 P.2d 165, 167 (1955):

"in the absence of a statutory pronouncement to the contrary it is within the trial court's discretion to designate the exhibits to be taken to the jury room."

*Accord, Ryan v. Blake,* 16 Ariz.App. 423, 493 P.2d 1228 (1972); *see* Rule 22.2, Arizona Rules of Criminal Procedure. This also appears to be the general rule in most jurisdictions. *See Metcalf v. Waterbury,* 60 Mich.App. 553, 231 N.W.2d 437 (1975); *Adrian v. Edstrom,* 304 Minn. 52, 229 N.W.2d 161 (1975) (for "good cause" the trial court can withhold an admitted exhibit from view by the jury); *Martin v. Schoonover,* 13 Wash.App. 48, 533 P.2d 438 (1975).

While technically this rule is not applicable here as the offending exhibit was already in the jury's possession in the jury room, we believe the rationale of the rule is no less forceful because at the time of the jury's request, the contents had not yet been viewed. While the exhibit had reached the jury room through the admitted mistake of defense counsel, the trial court was in a position, upon a timely request, to correct this error and properly consider the legal status of the exhibit. The trial court's conclusion that it had no power to do so was error. We must now determine whether this error was prejudicial.

As stated, the writings of Exhibit 12–A were only partially legible through the sealed bag in which they went to the jury. One of the writings was a brief discourse on salesmanship discussing such matters as how a salesman should relate to his customers and how to get the highest price. The more important note, as visible from outside the bag read:

"Bernie,

"The Grass is cool, but I"

Once the plastic bag is opened and the entire note can be seen, it reads as follows:

"Bernie,

The Grass is cool, but I

can't become a

branch office of your

supply store.

If it's just the

same to you go

ahead & take the

speed *please* ! ! I'll

still keep the

grass if you

want.

Terry"

Two things about this note require clarification. First, this note is rank hearsay evidence against defendant Bernard Pawley. Letters from a third party found in a defendant's possession are excludable hearsay, absent circumstances that are not here present, such as the defendant acting upon the letters or acquiescing in their contents.

See *People v. Colburn,* 105 Cal. 648, 38 P. 1105 (1895); *Schorr v. State,* 499 P.2d 450 (Okla.Cr.App.1972), *overruled on other grounds, Rowbotham v. State,* 542 P.2d 610 (Okla.Cr.App.1975); *State v. Roberts,* 95 Wash. 308, 163 P. 778 (1917). *See also Goben v. State,* 20 Okla.Cr. 220, 201 P. 812 (1921); *State v. Young,* 76 Wash.2d 551, 458 P.2d 8 (1969).

The second point requiring clarification is the devastating effect of permitting the jury to view the initially hidden portions of the note. It must be remembered that the defendant was faced with the charge of possession of marijuana *for sale.* The sole plausible defense offered was that the marijuana was possessed for his personal use. There is nothing in, "The grass is cool, but I" inconsistent with the personal use defense. But once the full text is revealed and the sentence becomes, "The grass is cool, but I can't become a branch office of your supply store," quite a different picture emerges. The clear implication of this sentence is that Pawley operated a marijuana store and was looking for branch offices to increase his sales. That the jury perceived this implication is highlighted by the relative celerity with which a verdict was returned after the jury received permission to open the bag containing the note.

Pawley's only defense to the charge of possession for sale was that the marijuana was held for his personal use, and therefore not for sale. Evidence was adduced at trial that Pawley claimed to smoke thirty marijuana cigarettes per day. The cigarette papers and sifter were testified to be consistent with the personal use of marijuana, and defense witnesses testified to Pawley's use of the plastic bags and the set of scales in the running of a retail plant business from his apartment. It was also pointed out that the relatively large amount of marijuana seized was an aggregate amount, achieved only after adding together the masses of a number of smaller seizures made at various locations throughout the apartment. The plausibility of the only defense theory was destroyed when the jury read the note.

Under the circumstances, the prejudicial effect of the exhibit is clear and a jury verdict based upon such evidence cannot stand. Since we reverse on this issue, we need not reach the question of whether defense counsel's failure to inspect the exhibit constituted ineffective assistance of counsel.

## KNOWLEDGE OF THE NARCOTIC NATURE OF THE PERCODAN TABLETS

Pawley's final allegation of error is directed to the conviction for possession of a narcotic drug. He claims the trial court erred in failing to grant his motion for a directed verdict because there was no showing that he was aware of the narcotic character of the tablets.

It is not error to deny a motion for directed verdict where the evidence is such that reasonable minds could differ on the inferences to be drawn therefrom. *State v. Reynolds,* 108 Ariz. 541, 503 P.2d 369 (1972). At trial, it was established that the Percodan tablets were found in the top drawer of a nightstand in Pawley's bedroom. When Pawley was advised by the police that he was under arrest "for possession of narcotic drugs and Percodan," he replied: "You mean those yellow tabs? Somebody turned me on to that. I don't do them." There was no error in denying defendant's motion for directed verdict, and the court affirms the conviction for possession of a narcotic drug.

The judgment and sentence on possession of marijuana for sale is reversed and the matter remanded for further proceedings. The judgment and sentence on possession of a narcotic drug is affirmed.

SCHROEDER, P. J., and OGG, C. J., concurring.